628 A.2d 854

**MEETING HOUSE LANE, LTD., Appellant,**

v.

**Vincent R. MELSO and Rose L. Melso, Appellees.**

Superior Court of Pennsylvania.

Argued April 13, 1993.

Filed June 9, 1993.

Reargument Denied Aug. 17, 1993.

120

Elliot B. Platt, Philadelphia, for appellant.

Richard H. Anderson, Media, for appellees.

Before CAVANAUGH, BECK and JOHNSON, JJ.

CAVANAUGH, Judge:

This is a mortgage foreclosure action based on a Guaranty and Suretyship Agreement, and the appeal arises out of a judgment in a bench trial in favor of appellees-guarantors. Appellant argues presently that the trial court erred in determining that the Agreement was conditional, such that it required the appellant to receive appellees-guarantors' permission for it to release security other than real estate. Our review of the Agreement indicates that it is unambiguously

absolute and unconditional. We, accordingly, find appellant's argument persuasive and reverse.

The appellees, Vincent R. and Rose L. Melso, entered into a Guaranty and Suretyship Agreement ("Agreement") on October 7, 1983 with First Pennsylvania Bank, the appellant's predecessor in interest. This Agreement was executed contemporaneously with a $500,000 Promissory Note executed pursuant to a loan to Continental Refrigeration Corporation ("CRC"). The Melsos, by this Agreement, guaranteed payment of the Note in the event CRC defaulted, executing a mortgage on their residence in Broomall, PA in favor of First Pennsylvania Bank. Apparently, Vincent R. Melso was involved with CRC's founding in 1968 and the Melsos were principals of CRC in 1983. The Agreement specifically notes that the guarantors have a direct financial interest in borrower and would benefit from the making of the loan.

On October 25, 1983, First Pennsylvania Bank secured the personal property of CRC and perfected its security interest in this property by filing a U.C.C. Statement with the Chester County Prothonotary's Office. However, First Pennsylvania Bank, on or about August 6, 1986, released its security interest in CRC's personal property at the request of Am Save Credit Corporation and/or CRC. No proceeds were realized when the property was released nor were the Melsos asked to give, nor did they give, their consent to release CRC's security. When CRC's property was released, it had a substantial value which the trial found as a fact to be in excess of $500,000. Subsequent to the release, CRC defaulted on the Note, the last payment being made on it in July, 1988. Although as of March, 1986, the Melsos were no longer officers of CRC, having sold their interest in the corporation, the Agreement between them and First Pennsylvania Bank was still in force. At the time of default, $399,490.62 was outstanding on the Note. First Pennsylvania Bank filed suit against the Melsos in January, 1989. Shortly thereafter, it conveyed its interest in the Agreement to Meeting House Lane, Ltd., the appellant, which became its successor-in-interest and continued the suit.

A bench trial was held on October 21, 1991. The basic legal position of the appellant was that the Agreement is unconditional and that regardless of the action taken by the predecessor-in-interest, First Pennsylvania Bank, in releasing CRC's collateral, the Guarantor (the Melsos) is responsible upon CRC's default. The appellees countered by asserting that the Guaranty and Suretyship Agreement is not an unlimited unconditional promise to pay upon default. Although admitting that the Agreement envisions that the Lender does not have to proceed against CRC's real estate before seeking payment from the Guarantor (the Melsos), they claim the guarantee is circumscribed by the Lender's responsibility to proceed against CRC's personal property before seeking payment from the Guarantor (the Melsos). The appellees contend that the following portion of the Agreement indicates that the unconditional guaranty, while it encompassed real estate, did not encompass the other personal property the lender secured as collateral for the note:

5. Guarantor agrees that Lender may at any time and from time to time, with or without consideration, either (i) release any one or more guarantors of the Note or other Loan Documents or (ii) agree to the substitution, exchange or release of all or any part of the Real Estate, without notice to, or further consent from Guarantor. Any such action shall not in any way affect or diminish the liability of Guarantor under this Agreement.

The appellees argue that subsection (ii) of the above, by affording the Lender the right to substitute, exchange or release Real Estate held as security without notice or consent from the Guarantor, contemplates by negative implication that the Guarantor has not afforded these same rights as to other security (e.g., personal property such as inventory).

After all the evidence was in, the trial court ruled in appellees' favor, finding their interpretation of the contract persuasive. It found as a fact that CRC's collateral security, which was released by First Pennsylvania Bank, had a value in excess of $500,000 at the time it was released, and it also found that the Bank released CRC's collateral without the

appellees' consent. It declared that the Bank breached the Guaranty and Suretyship Agreement by releasing CRC's personal property collateral. The court held that as a result of the Bank's breaching the Agreement, the appellees' obligations under the Note were discharged. Post-trial motions were subsequently made and denied. It is from the lower court's determination in the Melsos favor that this appeal arises. We note that the trial court's opinion finds all of appellant's issues waived on appeal for failure to adhere to Pa.R.Civ.P. 227.1(b).

The appellant raises the following arguments on appeal: (1) whether the lower court erred in failing to find that the Guaranty and Suretyship Agreement is absolute and unconditional; (2) whether the lower court erred in failing to find that the appellees consented to the release of collateral in the Guaranty and Suretyship Agreement; (3) whether the court erred in its valuation of CRC collateral released by First Pennsylvania Bank; and (4) whether the appellant has waived all issues on appeal for failure to comply with Pa.R.Civ.P. 227.1(b).

We address first appellant's fourth argument, since if we do not find his issues properly preserved for appellate review, we need not address the substance of its arguments.

The appellant claims that the trial court took an overly formalistic view of Rule 227.1 when it ruled that the appellant did not sufficiently articulate where the grounds of appeal were asserted at trial. He argues firstly that the Rule's requirements were met when he asserted in post-trial motions "[a]ll of the grounds raised in this Motion for the entry of judgment were raised before trial in response to Defendant's Motion for Summary Judgment, in objections to evidence or in argument at Trial and/or in the Post–Trial Brief of Plaintiff, Meeting House Lane, Ltd." Alternatively, the appellant argues that even if its methods of referring to the points of preservation was a bit perfunctory, no prejudice to the appel-

lees occurred and the trial court was not handicapped in any way from analyzing the issues.

Pa.R.Civ.P. 227.1(b) reads in pertinent part as follows:
(b) Post-trial relief may not be granted unless the grounds therefor,
(1) if then available, were raised in pre-trial proceedings or by motion, objection, point for charge, request for findings of fact or conclusions of law, offer of proof or other appropriate method at trial; and
(2) are specified in the motion. The motion shall state how the grounds were asserted in pre-trial proceedings or at trial. Grounds not specified are deemed waived unless leave is granted upon cause shown to specify additional grounds.

Under Rule 227.1(b), a post-trial motion must set forth the theories in support thereof so that the lower court will know what it is being asked to decide. *Cf. Frank v. Peckich*, 257 Pa.Super. 561, 579, 391 A.2d 624, 632–3 (1978) (Per Spaeth, J. Opinion in support of affirmance, with two Judges joining); *see also*, Pa.R.Civ.P. 227.1, Explanatory Comments. This rule's purpose is to provide the trial court with an opportunity to review and reconsider its earlier rulings and correct its own error. *American Association v. Casualty Reciprocal Exchange*, 527 Pa. 59, 67, 588 A.2d 491, 495 (1991); *Taylor v. Celotex Corp.*, 393 Pa.Super. 566, 583, 574 A.2d 1084, 1093 (1990).

We believe the lower court abused its discretion by ruling that the appellant's issues were subject to the waiver doctrine. We acknowledge that appellant's post-trial motion was not in full conformity with both the spirit and the letter of Rule 227.1's requirement that the post-trial motion state *how* the grounds for relief were asserted in a pre-trial proceeding or at trial. We do not commend appellant's lack of specificity in this regard. However, the tenor of our law would not find appellant's failure to constitute waiver of his issues that were otherwise properly preserved. Here, the appellant properly preserved his issues at pre-trial proceedings or at trial, and

raised them again in his post-trial motion. The trial court had no trouble articulating what issues appellant sought reviewed and addressed them in its Opinion. We find that appellant's very arguable violation of the Rule does not require the severe sanction of waiver.

In *American Assn., supra,* our Commonwealth's Supreme Court held that an issue was not waived even though it was raised for the first time in post-trial motions. *American Assn., supra,* 527 Pa. at 66–7, 588 A.2d at 495. The court, *inter alia,* declared that because the trial court and Superior Court addressed the issue's merits, waiver should not apply. *Id.* It noted that the purpose of Rule 227.1 is to provide an opportunity for the lower court to correct its own error. *Id.* The fact that the court addressed the issue eliminated the problem Rule 227.1 attempts to solve. *Id.* A review of the record provides abundant demonstration that the trial court had been given repeated exposure to the issues raised in post-trial motions. Accordingly, we find the issues raised in the post-trial motion preserved for our review.

■ The appellant's first and second arguments overlap to a large extent, and we address them together. The tenor of appellant's argument is that the court failed to recognize that the Agreement *sub judice* was absolute and unconditional. The appellant claims that the Agreement, when read as a whole, does not permit the defense of impairment of collateral. Further, the terms of the Agreement anticipate that the appellees are deemed to consent to any release of collateral that occurs.

■ The appellant's claim of error asserts that the court misinterpreted the Guaranty Agreement. Guaranty contracts are subject to the same rules of interpretation as other contracts, *Pennsylvania House, Inc. v. Barrett,* 760 F.Supp. 439, (M.D.Pa.1991), and the principles guiding our review of a contract's interpretation are settled. Whether the trial court has properly interpreted a contract is a question of law which this court will fully review. *N.E.A. Cross, Inc. v. National Fuel Gas Supply Corp.,* 410 Pa.Super. 451, 454, 600 A.2d 228,

229 (1991), *appeal den.* 530 Pa. 656, 608 A.2d 31 (1992); *Loeffler v. Mountaintop Area Joint Sanitary Authority,* 101 Pa.Cmwlth. 514, 520, 516 A.2d 848, 851 (1986). We have often declared:

> The paramount goal of contractual interpretation is to ascertain and give effect to the intent of the parties. In determining the intent of parties to a written agreement, the court looks to what they have clearly expressed, for the law does not assume that the language of the contract was chosen carelessly.

*PBS Coals, Inc. v. Barnham Coal Co.,* 384 Pa.Super. 323, 328, 558 A.2d 562, 564 (1989), as quoted in *N.E.A. Cross, supra,* 410 Pa.Super. at 455, 600 A.2d at 229. Furthermore, the parties have the right to make their own contract, and it is not the function of a court to rewrite it or to give it a construction in conflict with the accepted and plain meaning of the language used. *Amoco Oil Co. v. Snyder,* 505 Pa. 214, 221, 478 A.2d 795, 798 (1984); *Hagarty v. William Akers, Jr. Co.,* 342 Pa. 236, 239, 20 A.2d 317, 318 (1941). A contract must be construed as a whole. *Walton v. Philadelphia Nat. Bank,* 376 Pa.Super. 329, 340–341, 545 A.2d 1383, 1389 (1988); *Stern v. Vic Snyder, Inc.,* 325 Pa.Super. 423, 429, 473 A.2d 139, 142 (1984). One part of a contract cannot be interpreted so as to annul another part, and a contract must be construed, if possible, to give effect to all of its terms. *Second Federal Sav. and Loan Ass'n. v. Brennan,* 409 Pa.Super. 581, 586–7, 598 A.2d 997, 1000 (1991); *Cerceo v. DeMarco,* 391 Pa. 157, 161–2, 137 A.2d 296, 298 (1958). Additionally, a contract's terms, if ambiguous, are to be construed against the drafter. *Central Transportation, Inc. v. Board of Assessment Appeals of Cambria,* 490 Pa. 486, 496–7, 417 A.2d 144, 149 (1980).

Guided by these principles, we cannot but rule that the trial court erroneously read one narrow provision in the contract to limit the much broader powers afforded the appellant. It is unassailable that, when the whole contract is read in context, it is absolute and unconditional. The Agreement reads in pertinent part:

NOW, THEREFORE, for good and valuable consideration, intending to be legally bound hereby, Guarantor irrevocably and unconditionally agrees as follows:

1. Guarantor hereby guarantees the punctual performance of all Borrower's obligations under the terms of the Note and the other Loan Documents.

2. Guarantor hereby waives any right to notice from time to time under the provisions of the Loan Documents, waives any rights Guarantor may have by reason of any forbearance, modification, waiver, or renewal or extension which Lender may grant, or to which Lender and Borrower may agree, with respect to the Loan Documents, waives notice of acceptance of this Guaranty, and waives presentment, demand, notice or protest of any kind.

3. The obligations of Guarantor under this Agreement are primary, absolute, independent, irrevocable and unconditional. This shall be an agreement of suretyship as well as of guaranty and without being required to proceed first against Borrower or any person or entity, or against the Real Estate pursuant to the Mortgage or against any other security for Borrower's obligations to Lender, Lender may proceed directly against Guarantor whenever Borrower fails to make any payment when due, or otherwise fails to perform any obligation now or hereafter owed to Lender. This Agreement shall remain in full force and effect until all sums due under the Note, Mortgage and other Loan Documents have been paid in full to Lender and until all such sums received by Lender are not subject to rescission or repayment upon the bankruptcy, insolvency or reorganization of Borrower.

4. The obligations of Guarantor under this Agreement shall be unconditional and irrevocable, irrespective of (i) the genuineness, validity or enforceability of the Loan Documents, (ii) any limitation of liability of the Borrower contained in the Loan Documents, (iii) the existence of any security given to secure the Note, (iv) impossibility or the illegality of performance on the part of Borrower of its obligations under the Loan Documents, (v) the sale or other

transfer of all or any portion of the Real Estate (vi) any defense that may arise by reason of the incapacity or lack of authority of Borrower or Guarantor or the failure of Lender to file or enforce a claim against the estate of Borrower in any bankruptcy or other proceeding, or (vii) any other circumstances, occurrence or condition, whether similar or dissimilar to any of the foregoing, which might otherwise constitute a legal or equitable defense, discharge or release of a guarantor or surety. If Borrower defaults under the Note or other Loan Documents and Lender is prevented from accelerating payment under the Note or other Loan Documents (whether because of Borrower's bankruptcy, insolvency or reorganization or any other reason), Lender shall be entitled to receive from Guarantor, upon demand by Lender, the sums which would have otherwise been due and payable had such acceleration occurred.

5. Guarantor agrees that Lender may at any time and from time to time, with or without consideration, either (i) release any one or more guarantors of the Note or other Loan Documents or (ii) agree to the substitution, exchange or release of all or any part of the Real Estate, without notice to, or further consent from Guarantor. Any such action shall not in any way affect or diminish the liability of Guarantor under this Agreement.

Other provisions of the Agreement afford the Lender (1) the opportunity to confess judgment against the Guarantor in the event of default and (2) purports to bind not only the Guarantor, but the Guarantor's heirs, administrators, executors, and successors and assigns.

There can be only one interpretation of this broadly worded, one-sided Agreement: the Agreement unambiguously affords the holder of the Note the unconditional right to collect the debt from the Guarantor. The trial court disposition ignores the Agreement's pronouncement in Paragraph 3 that:

This shall be an Agreement of suretyship as well as of guaranty and *without being required to proceed first against Borrower or any person or entity,* or against the Real Estate pursuant to the Mortgage *or against any other*

*security for Borrower's obligations to Lender, Lender may proceed directly against Guarantor whenever Borrower fails to make any payment when due . . .*

Similarly, Paragraph 4 subsection (iii) also makes clear that the obligations of Guarantor are unconditional and irrevocable *irrespective* of any security given to secure the Note. Thus, notwithstanding the existence of any security the Borrower (CRC) might have, the Agreement affords the Lender the right to proceed directly against the Guarantor.

Read in context with the broad power afforded the Noteholder in these provisions and elsewhere in the Agreement, the trial court's reading of the Agreement is clearly contrary to the contract's plain import. A natural reading of the contract indicates that the holder of the Note has total discretion in whether to proceed against the Guarantor, *even if the Borrower's security exists.* Thus, the court's position that paragraph 5 by *negative implication* affords the Guarantor a right to consent to the release of Borrower security is unfounded: whether a right provided by negative implication exists can only be determined by reading the Agreement as a whole. What is important is not what the appellants wish to imply into the Agreement, but the relationship the parties clearly denoted by the words and breadth of the instrument. We may not annul Paragraphs 3 and 4 by granting appellees a right not directly afforded them in the written instrument.

Given the clear and unambiguous nature of the Agreement, we find that the guaranty is absolute and unconditional. Accordingly, the appellant had no duty to preserve the security and his failure to do so will not relieve the appellees of their obligation to pay upon default. See *McKeesport Nat'l. Bank v. Rosenthal,* 355 Pa.Super. 291, 294, 513 A.2d 434, 436 (1986); *First National Consumer Discount Co. v. McCrossan,* 336 Pa.Super. 541, 550, 486 A.2d 396, 401 (1984); *accord American Acceptance Corp. v. Scott Housing Systems,* 630 F.Supp. 70 (E.D.Pa.1985). We hold that the court erred in determining that the Agreement does not bind the Guarantor in the case *sub judice.* Given our disposition *supra,* we need not reach appellant's third argument.

For the reasons expressed *supra,* we reverse.

Judgment reversed. Case remanded for proceedings consistent with this Opinion.

Jurisdiction relinquished.