**STORNAWAYE PROPERTIES, INC., Plaintiff,**

v.

**Jack D. MOSES, Jr., et al., Defendants.**

**Nos. CIV.A. 99–2131, CIV.A. 99–3246.**

United States District Court, E.D. Pennsylvania.

Dec. 6, 1999.

608

Marjorie E. Greenfield, Anderson Greenfield & Dougherty Ltd., Philadelphia, PA, for Stornaway Properties, Inc.

Anne L. Carroll, Kramer & Friedman, PA, Mitchell A. Kramer, Mitchell A. Kramer & Associates, Rydal, PA, for Jack D. Moses, Jr., Louise G. Moses.

Mitchell A. Kramer, Mitchell A. Kramer & Associates, Rydal, PA, for Robert Allan Fox.

## MEMORANDUM & ORDER

KATZ, Senior District Judge.

The defendants have submitted a motion to dismiss, a motion for partial summary judgment, and a motion for a stay of remaining proceedings. The plaintiff, in turn, requests summary judgment in its favor.

### I. Background

Plaintiff Stornawaye Properties, Inc., brought two complaints stemming from defendants' obligations under a guaranty agreement. The first complaint attempted to collect the interest owing on a promissory note that defendants Jack and Louise Moses guaranteed in the event that the primary obligors, Andrew and Deborah Kerstein, did not pay.[1] At the time the guaranty was executed, Robert Allen Fox, the third named defendant, was serving as trustee for property located at 1472 Hunter Road in Rydal, Pennsylvania. In that capacity, Mr. Fox executed a collateral first mortgage on the property to secure the guaranty. The second complaint thus seeks to foreclose on the mortgaged property.[2]

Before the court now are three motions submitted by the defendants and one submitted by the plaintiff. Defendants first seek to dismiss Robert Allen Fox from this lawsuit, as he was sued only in his capacity as trustee, an office that he no longer holds. Defendants also request the entry of partial summary judgment with respect to the interpretation of the guaranty documents. Finally, defendants move to stay the proceedings in this case pending the outcome of litigation against the primary debtors. Plaintiff, in turn, requests summary judgment on all substantive issues pertaining to the guaranty documents, the counterclaims and affirmative defenses, and the right to foreclose on the mortgage.

### II. The Motion to Dismiss Fox

Mr. Fox became trustee of the Hunter road property pursuant to a deed of trust executed on December 19, 1990. *See* Def. Mot. Ex. 6. Although he terminated this trust and conveyed the property back to Jack and Louise Moses, *see* Def. Mot. Ex. 7, the defendants have not met their burden of showing that there is "no set of facts that would entitle [plaintiff] to relief" against Mr. Fox. *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir.1996).

### III. The Motions for Partial Summary Judgment and Summary Judgment on the Guaranty Documents

The defendants seek a declaratory judgment to resolve the extent to which Jack and Louise Moses must pay interest prior to plaintiff's exhaustion of remedies against the Kersteins, the appropriate rate of interest, and the maximum limit of defendants' liability. Plaintiff's motion challenges the defendants' interpretation and requests summary judgment in favor of its own reading of the contract.

---

**1.** This complaint is designated Civil Action Number 99–2131.

**2.** This complaint is designated Civil Action Number 99–3246.

## A. The Agreements

. The present conflict begins with a promissory note for $350,000, dated September 25, 1992, issued to Andrew and Deborah Kerstein but guaranteed by Jack and Louise Moses. *See* Def. Mot. Ex. 4. This note provides for an initial interest rate of 7.5 percent with subsequent rates subject to change based on the Wall Street Journal Index.[3]

> The interest rate to be applied to the unpaid principal balance of this Note will be at a rate of 1.000 percentage point over the Index, subject however to the following minimum and maximum rates, resulting in an initial rate of 7.500% per annum. Notwithstanding the foregoing, the variable interest rate or rates provided for in this Note will be subject to the following minimum and maximum rates. NOTICE: Under no circumstances will the interest rate on this Note be less than 7.500% per annum or more than (except for any higher default rate shown below) the lesser of 11.500% per annum or the maximum rate allowed by applicable law.

*Id.* The default interest rate is 24 percent. *See id.*

The guaranty agreement states that Jack and Louise Moses guaranteed loans of $350,000 (Loan A) and $100,000 (Loan B) made to the Kersteins. *See* Def. Mot. Ex: 1 (Guaranty Agmt.). As Stornawaye did not purchase Loan B, only Loan A is at issue in this case. The guaranty is explicitly limited by Exhibit A to the agreement, hereinafter referred to as the letter agreement. *See* Def. Mot. Ex. 1 art. 1 ¶ 1.01 (stating that guaranty is limited by Exhibit A). That letter agreement explains that the Moses defendants' liability is capped at $292,500, rather than the full $450,000 borrowed by the Kersteins. *See* Def. Mot. Ex. 2 ¶ 1 (Letter Agmt.). The most relevant provisions of the letter agreement state:

4. Should any interest payment for Loan A or Loan B become sixty (60) days past due, you agree to keep interest payments current on both Loan A and Loan B unless and until [Kerstein] resumes payment of interest.

5. If Loan A or Loan B is in default, Metrobank[4] will first exercise and exhaust all of its rights and remedies under the loan documents against Andrew M. Kerstein, Deborah J. Kerstein and Andy K's Dairy and Deli, Inc. and against the collateral provided by them which secures Loan A and Loan B, before Metrobank:

 a) requires payment from you, except as to the interest payments due Metrobank in Paragraph 4 above, under each of your Guarantees for Loan A and Loan B;

 b) or exercises any of Metrobank's rights which Metrobank has pertaining to any collateral from you, except as to the interest payments due Metrobank in Paragraph 4 above, which secures Loan A, Loan B or any of your Guarantees that you have granted to Metrobank or which may be obtained by Metrobank under your Guaranty or other mortgage and loan documents.

*Id.* ¶¶ 4–5.

The document mortgaging the property in Rydal, Pennsylvania also explains that the maximum amount guaranteed was $292,500 and that the guaranty and letter

---

**3.** The exact language reads: "The interest rate on this Note is subject to change from time to time based on changes in an independent Index which is the Wall Street Journal (the 'Index')." *Id.*

**4.** The now defunct Metrobank was the original lender. In 1996, the FDIC was appointed receiver of Metrobank, thereby becoming its successor in interest with respect to both the Kersteins' obligation and the Moses guaranty. In 1999, the FDIC sold the obligation and accompanying guaranty to Stornawaye Properties, the present plaintiff. *See* Compl. 99–2131 Ex. D (Def.Mot.Ex. 8).

agreement limit recovery. *See* Def. Mot. Ex. 5. The mortgage document also states,

[I]f at any time default shall be made in the payment of interest as aforesaid, for the space of sixty (60) days after notice from Mortgagee that any such payment hereof has fallen due, then, and in such case the whole unpaid principal debt aforesaid shall, at the option of the said Mortgagee its Successors or Assigns and subject to the limitations of Exhibits "A" and "B"[5], become due and payable immediately; and payment of said principal debt, and all interest thereon, may be enforced and recovered at once, subject to the limitations of Exhibits "A" and "B".

Def. Mot. Ex. 5 at 1.

B. Discussion[6]

The Kersteins defaulted on the promissory note on March 30, 1996, and the loan matured on September 25, 1997. At that time, the outstanding principal was $260,-139.48. *See* Pl. Mot. Ex. B. Plaintiff thus seeks from the Moses defendants unpaid interest on the loan from March 30, 1996, to the September 25, 1997, maturity date at the Index rate plus one percent; after September 25, 1997, plaintiff seeks interest at the default rate. *See* Pl. Mem. of Law at 8.

1. The Extent of the Guaranty

Defendants argue that the plain language of paragraph four of the letter agreement means that Jack and Louise Moses "cannot be obligated to pay any past due interest or other charges beyond 'current' monthly interest on Loan A and Loan B" until Stornawaye exhausts remedies against the Kersteins. Pl. Mot. for Summ. J. at 9. That is, defendants argue that by stating in paragraph four that the obligation was to "keep interest current" rather than to "pay all interest due" or some other similar formulation, the letter agreement obligates them only to begin making monthly incremental interest payments on the remaining principal balance without reference to any amount of interest that is past due.[7]

The promissory note and the guaranty agreement are governed by Pennsylvania law. *See* Def. Mot. Ex. 4; Def. Mot. Ex. 1 ¶ 3.11. For purposes of interpretation, a guaranty agreement is treated in the same manner as any other contract. *See Hyster Credit Corp. v. O'Neill*, 582 F.Supp. 414, 416 (E.D.Pa. 1983); *Meeting House Lane, Ltd. v. Melso*, 427 Pa.Super. 118, 628 A.2d 854, 857 (1993). "A court's purpose in examining a contract is to interpret the intent of the contracting parties, as objectively manifested by them." *Hullett v. Towers, Perrin, Forster & Crosby, Inc.*, 38 F.3d 107, 111 (3d Cir.1994). The court must initially determine whether the contractual lan-

---

**5.** Exhibit A is the letter agreement, and Exhibit B is the guaranty agreement.

**6.** Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the burden of demonstrating the absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When ruling on a summary judgment motion, the court must construe the evidence and any reasonable inferences drawn therefrom in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In other words, if the evidence presented by the parties conflicts, the court must accept as true the allegations of the non-moving party. *See id.* However, Rule 56 "mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *See Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548.

**7.** Based on the proposed orders submitted by defendants, they appear to believe that they are obligated to pay only $1,625.87 a month pending exhaustion of remedies against the Kersteins.

guage is ambiguous, which means that "it is susceptible of two reasonable alternative interpretations." *Id.; see also Duquesne Light Co. v. Westinghouse Elec. Corp.,* 66 F.3d 604, 614 (3d Cir.1995) (focusing on whether language may be interpreted in different ways). However, if the language is not ambiguous and can therefore be read in only one way, the court interprets the contract as a matter of law. *See Hullett,* 38 F.3d at 111. Pennsylvania law presumes that "the intent of the parties to an instrument is embodied in the writing itself, and when the words are clear and unambiguous the intent is to be discovered only from the express language of the agreement." *Id.* (citations, internal punctuation omitted). In the end, the court must "consider the words of the contract, the alternative meaning suggested by counsel, and the nature of the objective evidence to be offered in support of that meaning." *Id.* (citations, internal punctuation omitted).

■ The contractual language in this case is not ambiguous, and there is no basis for finding that it gave defendants the right to calculate interest payments without reference to past due debts.[8] The language of the promissory note, the letter agreement, and the mortgage agreement supports this conclusion. First, the promissory note to which the guaranty is attached explicitly precludes defendants' interpretation because its method of structuring payments for interest calculates them with reference to past due amounts: "Borrower will pay regular monthly payments of all accrued interest due as of each payment date." Def. Mot. Ex. 4. That is, the interest payment referred to in the letter agreement incorporates past due amounts, so to refer to some hypothetical interest payment that does not include these sums is inconsistent with the terms of the contract. Second, the letter agreement that limits the Moses defendants' liability states that there is a sixty

day grace period following default on the loan and that after that time, the lender may seek interest from the defendants. *See* Def. Mot. Ex. 2 ¶¶ 4–5. Although the agreement states that the holder of the loan must exhaust remedies against the Kersteins before proceeding against the Moses defendants, it explicitly and repeatedly excludes the obligation to keep interest current from that exhaustion requirement. *See id.* Finally, although neither party refers to the mortgage document, it also states that all interest is "due and payable immediately" following the end of the grace period. Def. Mot. Ex. 5 at 1.

Defendants suggest that the documents' failure to provide for notice to the Moses defendants in the event that the Kersteins failed to pay amounts due means that Stornawaye may only require the Moses defendants to begin making monthly payments without reference to such past due amounts. However, the guaranty agreement itself states that the "obligations of Guarantors hereunder shall remain in full force and effect without regard to, and shall not be released, discharged or in any way affected by . . . the failure of Metrobank to keep Guarantors advised of Borrower's financial condition, regardless of the existence of any duty to do so." Def. Mot. Ex. 1 ¢–¶ 1.¢–02(e); *see also id.* ¶ 1.03 (*"No Notice.* Guarantors hereby waive diligence, presentment, demand, protest and all notices of any kind."). Thus, defendants' contention is again foreclosed by the terms of the agreement.

In short, the contractual language is not ambiguous, and Stornawaye's motion for summary judgment on this issue will be granted. The interest payment to which all of the documents refer incorporates past due interest, and the documents explicitly waive notice.

### 2. The Interest Rate

As recounted previously, the promissory note establishes that the interest rate to be applied to unpaid principal is a variable

---

**8.** As there are no ambiguities to resolve against the drafter, the parties' dispute as to

who wrote the documents becomes immaterial.

interest rate based on an Index in the Wall Street Journal, although there are certain maximum and minimum rates. The default rate is 24 percent. *See* Def. Mot. Ex. 4. The Moses defendants argue that the interest rate should not be higher than the initial 7.5 percent because there is nothing in the loan file or the FDIC documents supplied by Stornawaye that identifies the Index or establishes a higher rate; that is, defendants attempt to argue that they were unaware that the "Index" was the prime index in the Wall Street Journal. This argument is implausible, as the language of the note itself and supporting documentation provided by plaintiff strongly suggest that the rate at issue is the prime rate. *See id.;* Pl. Mot. Ex. K (listing prime index interest rates since 1975); Pl. Reply Ex. A (Aff. reiterating that the "prime" is an index reprinted in the Wall Street Journal); Pl. Reply Ex. I (loan review documents referring to "prime"). The court will grant summary judgment as to the application of the prime rate plus one prior to maturity and the 24 percent default rate following the loan's maturity. While defendants argue that the default rate cannot be applied to them because they have no obligation to pay past due amounts, this interpretation of the contract is incorrect, and thus the analysis as applied to the interest rate is equally flawed.

### 3. The Maximum Aggregate Payment

The defendants also seek judgment on the total aggregate payment due. Defendants supply an affidavit from Andrew Kerstein regarding the amount he paid on one of the loans. *See* Def. Reply Ex. Ex. 3. The parties may submit calculations, supported by affidavit, regarding the total amount presently due.

### IV. Plaintiff's Motion for Summary Judgment on the Counterclaims and Defendants' Affirmative Defenses

#### A. Equal Credit Opportunity Act Claims

Louise Moses has asserted both defenses and counterclaims relying on the Equal Credit Opportunity Act (ECOA). The Act prohibits creditors from discriminating against "any applicant, with respect to any aspect of a credit transaction ... on the basis of ... sex or marital status[.]" 15 U.S.C. § 1691(a)(1). Regulation B promulgated pursuant to that Act states that "a creditor shall not require the signature of an applicant's spouse or other person, other than a joint applicant, on any credit instrument if the applicant qualifies under the creditor's standards of creditworthiness for the amount and terms of the credit requested." 12 C.F.R. § 202.7(d). Mrs. Moses argues that Metrobank forced her to sign the guaranty and mortgage without an inquiry into whether Mr. Moses qualified on his own for the loan in question and that Stornawaye therefore cannot collect interest from her or foreclose on collateral in her name.

In its motion for summary judgment, plaintiff argues that these defenses and counterclaims are impermissible for several reasons. Although these arguments have evolved, the court believes the plaintiff has raised the following points: (1) ECOA has a two-year statute of limitations that has expired; (2) Mrs. Moses was a "joint applicant" in the credit transaction at issue because that loan was part of a series of credit transactions related to a settlement that included a release of defenses against three previous lawsuits in which Mrs. Moses was named as a defendant; and (3) the release signed in the original lawsuits precludes reference to the ECOA defenses asserted here.

First, plaintiff stresses that ECOA has a two-year statute of limitations that should be measured from the time the documents were signed. *See* 15 U.S.C. § 1691e(f); *Roseman v. Premier Fin. Servs.*, Civ. A. No. 96–4669, 1997 WL 570919 (E.D.Pa. Sept. 3, 1997). However, Third Circuit case law has repeatedly held that, notwithstanding the two-year statute

of limitations on affirmative actions, an ECOA violation may be raised as a defense after that period. *See Algrant v. Evergreen Valley Nurseries Ltd. Partnership,* 126 F.3d 178, 181–82 (3d Cir.1997); *Silverman v. Eastrich Multiple Investor Fund, L.P.,* 51 F.3d 28, 31–33 (3d Cir. 1995); *see also Nowicki v. Green,* Civ. A. No. 98–5100, 1999 WL 305243, at *3 (E.D.Pa. May 12, 1999) (holding that right to use ECOA as a defense applied to mortgage foreclosure action). Although the plaintiff appears to concede this point, the court will deny the plaintiff's motion for summary judgment as to the affirmative ECOA defenses to the extent it is based on the statute of limitation.

▆▆▆▆ The court will grant the motion as applied to the counterclaims, however, which seek damages, and are thus analogous to affirmative actions that are barred by the statute of limitations. *See Sony Elec., Inc. v. S.G. Putnam, Jr.,* 906 F.Supp. 228 (D.N.J.1995). The defendants attempt to resurrect their counterclaims by asserting that these claims are brought only against Stornawaye because of its own failure to ensure that the original transaction complied with ECOA. *See* Def. Reply Mem. at 7 n. 3. Although defendants correctly note that the Third Circuit reserved the issue of whether the institution of collection actions might constitute new ECOA violations, *see Silverman,* 51 F.3d at 31, the court agrees with the reasoning articulated in *Roseman,* 1997 WL 570919, which rejected a similar claim. In that opinion, Judge Pollak thoroughly examined the purposes of ECOA and the Third Circuit's rationale for permitting ECOA defenses to be raised after the statute of limitations had expired. In particular, he focused on the fact that permitting a new counterclaim premised on the successor's efforts to collect would require extensive evaluation of the original credit transaction. *See id.* at *4. This would squarely implicate statute of limitations concerns in a way that a defensive argument does not. *See id.* & n. 4. Similarly, in the present case, permitting a counterclaim premised on the notion that Stornawaye should have investigated the circumstances of the original loan and guaranty before attempting to collect would directly contravene the goal of the two-year statute of limitations. Given the absence of any material fact suggesting that Stornawaye itself acted improperly, the court will grant plaintiff's motion for summary judgment on the counterclaims asserting ECOA violations.

As to the affirmative defenses themselves, plaintiff also claims that a release signed by both defendants in the original Metrobank action means that Mrs. Moses cannot now assert ECOA defenses. Both parties agree that Metrobank had confessed judgment against Jack and Louise Moses, as well as the Kersteins, and that the Moses defendants had raised ECOA counterclaims and defenses against those actions. Those lawsuits were settled by mutual releases and the extension of additional credit. The release, signed October 23, 1992, reads:

> Jack D. Moses and Louise Moses, Releasors, for and in consideration of mutual releases and the extension of additional loans, do hereby remise, release, and forever discharge Metrobank of Philadelphia, N.A., Releasee, its heirs, executors, and administrators, of and from all, and all manner of, actions and causes of action, suits, debts, dues, accounts, bonds, covenants, contracts, agreements, judgments, claims and demands, whatsoever in law or equity, which were or could have been raised in the actions captioned Metrobank of Philadelphia, N.A. v. Jack D. Moses, Jr., et al., Court of Common Pleas of Montgomery County, Nos. 91–02943, 91–03355, and 91–03358, which against the said Releasee, Releasors ever had, now have, or which their heirs, executors, administrators, successors or assigns, or any of them, hereafter can, shall or may have, for, or by reason of any cause, matter or thing

whatsoever, from the beginning of the world to the date of these presents.

Pl. Mot. Ex. F.

 "The courts of Pennsylvania have traditionally determined the effect of a release using the ordinary meaning of its language *and* interpreted the release as covering only such matters as can fairly be said to have been within the contemplation of the partes when the release was given." *Vaughn v. Didizian,* 436 Pa.Super. 436, 648 A.2d 38, 40 (1994) (citations, internal punctuation omitted); *see also Jordan v. SmithKline Beecham, Inc.,* 958 F.Supp. 1012, 1019 (E.D.Pa.1997) (same). While Pennsylvania courts strictly construe releases so as not to bar causes of action that have not yet accrued, *see, e.g., Vaughn,* 648 A.2d at 40, a party cannot avoid the clear language of a release by stating that he or she did not intend to release a particular claim. *See Jordan,* 958 F.Supp. at 1020. That is, if the language and intent indicate that even unaccrued or unknown claims are to be released, that intent will be enforced. *See id.* at 1019–20. "Pennsylvania law is clearly that where the parties manifest an intent to settle all accounts, the release will be given full effect even as to unknown claims." *Three Rivers Motors Co. v. Ford Motor Co.,* 522 F.2d 885, 896 (3d Cir.1975); *see also Total Containment, Inc. v. Environ Prods., Inc.,* 921 F.Supp. 1355, 1415 (E.D.Pa.1995) (same).

 In this case, the release indicates that the parties intended to "settle all accounts" with the release. The new loans that are the subject of this lawsuit were specifically referred to in the release, and the release was actually signed after the new loans were issued, thus eliminating any possibility that Mrs. Moses's claims had not yet accrued. Defendants essentially argue that even though they had raised ECOA counterclaims and defenses in the original lawsuits and dismissed those claims in consideration for new loans and mutual releases, they should be able to raise new ECOA counterclaims and defenses with respect to the consideration they received. The court is not ruling that such a result would be foreclosed in every case, but, given the relationship between the new credit transactions and the releases, the parties cannot plausibly claim that the intent of the signatories was to preserve ECOA defenses and thus challenge the very credit transaction from which they both benefitted.[9]

Defendant's reliance on *Philadelphia Factors, Inc. v. Gordon,* Civ. A. No. 98–3578, 1999 WL 225866 (E.D.Pa. Apr. 16, 1999), is misplaced. In that case, the court implicitly rejected the claim that because the wife asserting ECOA violations had received consideration for the allegedly deficient agreement she signed, she was foreclosed from asserting the ECOA defenses. *See id.* at *8–10. In this case, the court does not rule that because Mrs. Moses received consideration for settling the original lawsuit, she cannot raise ECOA defenses; rather, the court rules that because the release contemplated that the parties were to settle all aspects of the lawsuits, including ECOA claims, the ECOA defenses are presently foreclosed to the extent they arise from transactions that were part of the release. Defendants do not challenge the validity of the release or argue that it was coerced; they only argue that its terms do not apply to the present action.[10] As the court disagrees,

---

9. As the court rules on this basis, it does not evaluate the plaintiff's other argument, that Mrs. Moses was a joint applicant.

10. In response to this argument, defendants argue that the plain language of the release does not include the word "defense" and that Mrs. Moses may thus argue ECOA violations as a defense. However, notwithstanding the release's failure to mention that particular word, the clear intention of the release was to settle accounts regarding the claims and counterclaims of the original lawsuit. This included alleged ECOA violations pertaining to Mrs. Moses's signature. Although the court is equally unpersuaded by plaintiff's lengthy responsive argumentation that Mrs. Moses is actually raising the affirmative claim of recoupment, which is arguably foreclosed

the plaintiff's motion for summary judgment will be granted on this issue.

### B. Transfer of the Property

Mrs. Moses argues that plaintiff cannot foreclose on the property in Rydal because that property was transferred solely to her in November 1998. Her arguments on this point appear in large part to be premised on the alleged ECOA violations. *See* Answer 98–3246 Aff. Defenses ¶¶ 4–5. To the extent that Mrs. Moses's defenses are based solely on the ECOA violations, the plaintiff's motion for summary judgment will be granted on this point as well. However, as it is not clear from the papers submitted by the parties if there are other bases to challenge the foreclosure, the motion seeking foreclosure is denied without prejudice. The point may be moot if plaintiff issues execution on the judgment which the court will enter for all interest due to date.

### V. The Motion for a Stay

Finally, defendants move for a stay. The court will deny this motion, as there is no justification for delaying the resolution of the remaining issues.

### VI. Conclusion

In summary, the court makes the following rulings:

First, plaintiff's motion to dismiss Robert Allen is denied because, as trustee, he could be found liable under some conceivable set of facts.

Second, plaintiff is correct in its interpretation of the contractual language. The guaranty and the letter agreement clearly and unambiguously require the Moses defendants to pay all interest that is past due after the sixty day grace period has expired. The interest rate to be applied from the time of default to the time of maturity is the prime rate plus one. Following the maturity date, Stornawaye Properties is entitled to recover unpaid interest on the loan at the default rate of 24 percent.

Third, plaintiff is entitled to summary judgment on Louise Moses's counterclaims and affirmative defenses relying on ECOA. While the statute of limitations does not bar the defensive claims, the counterclaims are time-barred, and, in any event, both the counterclaims and the defenses are precluded by the 1992 release.

Fourth, the defendants' motion for a stay is denied.

As stated previously, the parties may submit calculations pertaining to the total amount owing on the loans at issue in this case within ten business days of the date of this memorandum and order.

An appropriate order follows.

### *ORDER*

**AND NOW,** this 6th day of December, 1999, upon consideration of Defendants' Motion to Dismiss Robert Allen Fox, Trustee (docket number 23), Defendants' Motion for Partial Summary Judgment (docket number 23), Defendants' Motion for a Stay (docket number 23); Plaintiff's Motion for Summary Judgment (docket number 26); and the responses thereto, it is hereby **ORDERED** as follows:

(1) The Motion to Dismiss Robert Allen Fox is **DENIED** without prejudice.

(2) Defendants' Motion for Partial Summary Judgment is **DENIED**.

(3) Plaintiff's Motion for Summary Judgment is **GRANTED** in part and **DENIED** in part:

 a. Plaintiff's Motion is **GRANTED** with respect to the contractual interpretation. The contract establishes an obligation to keep interest current, including past due interest, following the sixty day grace period.

 b. Plaintiff's Motion is **GRANTED** with respect to the applicability of the 24 percent default interest rate following the loan's maturity.

by the release, it is unnecessary to rely on this point to rule against defendants' interpretation.

c. Plaintiff's Motion is **GRANTED** with respect to the applicable rate of interest prior to the loan's maturity.

d. Plaintiff's Motion is **GRANTED** with respect to defendants' affirmative defenses and counterclaims pertaining to the Equal Credit Opportunity Act and to the transfer of the mortgage.

e. Plaintiff's Motion is **DENIED** without prejudice with respect to foreclosure.

(4) Defendants' Motion for a Stay is **DENIED**.

(5) Within ten business days of the date of this order, the parties may submit calculations, supported by affidavit, addressing the total amount due by defendants given the rate of interest and other issues decided in the foregoing memorandum. In addition, the parties shall submit suggested forms of judgment in light of the foregoing opinion.