J-A06009-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| BELGRAVIA CONDOMINIUM ASSOCIATION, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| 1811 BELGRAVIA ASSOCIATES | |
| Appeal of: O'Donnell & Naccarato, Inc. | No. 385 EDA 2014 |

Appeal from the Judgment entered November 27, 2013
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): May Term, 2010, No. 00946

| | |
|---|---|
| BELGRAVIA CONDOMINIUM ASSOCIATION, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| 1811 BELGRAVIA ASSOCIATES, L.P., ET AL. | |
| Appeal of: O'Donnell & Naccarato, Inc. | No. 446 EDA 2014 |

Appeal from the Judgment entered November 27, 2013
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): May Term, 2010, No. 00946

BEFORE:  PANELLA, J., OTT, J., and JENKINS, J.

MEMORANDUM BY JENKINS, J.                    **FILED AUGUST 13, 2015**

A jury entered a verdict of $350,000.00 against O'Donnell & Naccarato, Inc. ("Engineer") in this civil action. Following denial of post-verdict motions and entry of judgment, Engineer filed two appeals which this court has consolidated for purposes of disposition.[1] For the reasons articulated below, we affirm the judgment at 385 EDA 2014 and quash the appeal at 446 EDA 2014.

The Belgravia Building is a century-old building at 1811-19 Chestnut Street in Philadelphia. In 2006, a developer, 1811 Belgravia Associates, and other related parties[2] started to convert the building into a condominium. Also in 2006, in order to comply with the Uniform Condominium Act ("UCA"),[3] the Belgravia defendants hired Engineer to inspect the building and report its findings. Engineer is a professional engineering firm that is in the business of providing, among other things, structural engineering and design services.

In 2010, Belgravia Condominium Association ("Association") filed a civil action against Engineer and the Belgravia defendants. Association alleged that Engineer was liable for professional negligence and breach of

---

[1] Order dated May 19, 2014 (consolidating Engineer's two appeals *sua sponte* pursuant to Pa.R.A.P. 513).

[2] We refer to all defendants other than Engineer as the "Belgravia defendants".

[3] 68 Pa.C.S. § 3101 *et seq*.

the UCA on the grounds that Engineer's inspection and report fell below the standard of care for the engineering profession, and Engineer defrauded purchasers of condominium units by revising its draft report to conceal defects in the condition of the building.

At the close of Association's case-in-chief, Engineer moved for a compulsory nonsuit, arguing that its work was not negligent, and that it complied with the UCA by identifying all visible defects.[4] The trial court did not formally deny Engineer's motion on the record, but it is implicit from the record that the court denied the motion because Engineer went on to present its own witnesses. Engineer did not move for a directed verdict at the close of evidence.

The verdict slip directed the jury to answer whether Engineer "breached the standard of care applicable to professional engineers", and whether "[Engineer's] breach of the standard of care caused Association harm?"[5] The jury answered "yes" to both questions and awarded $350,000 in compensatory damages to Association.[6]

_____

[4] N.T., 6/14/13, at 22-31.

[5] N.T. 6/19/13, at 12-13 (questions 1 and 2 on page 2 of verdict slip).

[6] *Id*. The jury also held the Belgravia defendants liable for $3,800,000 in compensatory damages and $900,000 in punitive damages. The Belgravia defendants later settled with Association, leaving Engineer as the only appellant in these appeals.

Engineer filed timely post-verdict motions seeking judgment n.o.v., which the court denied, followed by a praecipe for entry of judgment against itself. Engineer then filed two appeals, which we have consolidated. Without ordering Engineer to file a Pa.R.A.P. 1925(b) statement, the trial court filed a Pa.R.A.P. 1925(a) opinion.

Before turning to Engineer's arguments, we explain why we quash its second appeal. On December 12, 2013, Engineer filed its first notice of appeal following entry of judgment against itself but before entry of a final order relating to the Belgravia defendants. On January 2, 2014, the court entered an order marking Association's action against the Belgravia defendants settled, discontinued and ended. This order disposed of all remaining claims and parties and made Engineer's first appeal ripe for disposition. Pa.R.A.P. 905(a)(5) ("a notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof").

On January 30, 2014, Engineer filed a second notice of appeal. It appears that Engineer filed this appeal as a protective measure because it was uncertain whether its first appeal was timely. Because Engineer's first appeal is ripe for disposition under Pa.R.A.P. 905, we quash its second appeal as technically unnecessary. Pa.R.A.P. 1972(7) (appeal subject to quashal for "any … reason appearing on the record").

Engineer raises three issues in its first appeal:

The trial judge erred by not applying the economic loss doctrine to bar claims for what are solely economic losses.

The trial judge erred in denying [Engineer's] posttrial motion for jnov in a case where: [Association's] experts could not state what defects existed at the time of the inspection; recommendations made by the inspecting engineer were not followed by the owners; and no analysis was offered on how the allegedly improper inspection caused any damages.

[Engineer] did not waive its right to appeal the denial of a post-trial motion seeking jnov.

Brief For Appellant, pp. 13, 14, 25.

In its first argument, Engineer contends that it is entitled to judgment n.o.v. because the economic loss doctrine precludes Association's claims of monetary damage. The economic loss doctrine provides that no cause of action exists for negligence that results solely in economic damages unaccompanied by physical injury or property damage. ***Adams v. Copper Beach Townhome Communities, L.P.***, 816 A.2d 301, 305 (Pa.Super.2003). Engineer waived this argument by failing to move for a compulsory nonsuit or directed verdict on this issue during trial.

A motion for judgment n.o.v. is a post-trial motion which requests the trial court to enter judgment in favor of the moving party. There are two bases on which the court can grant judgment n.o.v.:

[O]ne, the movant is entitled to judgment as a matter of law and/or two, the evidence is such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant. With the first, the court reviews the record

- 5 -

and concludes that even with all factual inferences decided adverse to the movant the law nonetheless requires a verdict in his favor, whereas with the second, the court reviews the evidentiary record and concludes that the evidence was such that a verdict for the movant was beyond peradventure.

*Polett v. Public Communications, Inc.*, 83 A.3d 205, 212 (Pa.Super.2013). In an appeal from the trial court's decision to deny judgment n.o.v.,

we must consider the evidence, together with all favorable inferences drawn therefrom, in a light most favorable to the verdict winner. Our standard of review when considering motions for a directed verdict and judgment notwithstanding the verdict are identical. We will reverse a trial court's grant or denial of a judgment notwithstanding the verdict only when we find an abuse of discretion or an error of law that controlled the outcome of the case. Further, the standard of review for an appellate court is the same as that for a trial court.

*Id*. at 211.

To preserve a motion for judgment n.o.v. for appeal, the appellant must either move for a compulsory nonsuit *or* a directed verdict during trial. The most comprehensive discussion of this point is in *Haan v. Wells*, 103 A.3d 60 (Pa.Super.2014), where this Court held that the Haans waived their challenge to the sufficiency of the evidence underlying the Wells' counterclaim by failing to move for a compulsory nonsuit or directed verdict during trial. We reasoned:

Regarding the Haans' sufficiency challenge, our review of the record demonstrates *that the Haans did not raise such a claim by oral or written motion*

- 6 -

*with the trial court either for a nonsuit or a directed verdict.* In **Bennyhoff v. Pappert**, 790 A.2d 313 (Pa.Super.2001), we set forth the following with regard to preserving a sufficiency claim:

> Pursuant to Pa.R.C.P. 230.1(c), a trial court may enter a nonsuit in favor of any or all [ ] defendants, if, at the close of the plaintiff's case against all defendants, the plaintiff has failed to establish a right to relief. 'A motion for compulsory nonsuit allows a defendant to test the sufficiency of a plaintiff's evidence.' **Harnish v. School District of Philadelphia**, [] 732 A.2d 596, 598 (Pa.1999). A sufficiency of the evidence claim may also be raised through a motion for a directed verdict. **Lear, Inc. v. Eddy**, 749 A.2d 971 (Pa.Super.2000).

**Bennyhoff**, 790 A.2d at 317 (citation modified). Because the appellant in **Bennyhoff** failed to request *either a nonsuit or a directed verdict*, we concluded that the appellant's sufficiency challenge was waived. **Id**.

In **Estate of Hicks v. Dana Companies, LLC**, 984 A.2d 943 (Pa.Super.2009) (e*n banc*), an *en banc* panel of this Court noted that the appellants in an asbestos case had preserved a challenge to the sufficiency of the evidence by making an oral motion for a directed verdict at the close of the evidence. **Id**. at 951 n. 3 (citing **Hayes v. Donohue Designer Kitchen Inc.**, 818 A.2d 1287, 1291 n. 4 (Pa.Super.2003)) (stating 'cases indicate that in order to preserve the right to request a JNOV post-trial[,] a litigant must first request a binding charge to the jury or move for a directed verdict at trial').

Finally, our Commonwealth Court has recognized, and adopted, this Court's adherence to the principle that sufficiency challenges must first be raised before the trial court by a motion for a directed verdict. In **Com. Dept. of Gen. Servs. v. U.S. Mineral Prods. Co.**, 927 A.2d 717 (Pa.Cmwlth.2007), the

Commonwealth Court, citing **Bennyhoff** and **Thomas Jefferson Univ. v. Wapner**, 903 A.2d 565, 570 (Pa.Super.2006), explained that 'our Superior Court requires a motion for directed verdict during trial as a prerequisite to a post-trial motion for JNOV based on the state of the evidence.' **U.S. Mineral Prods.**, 927 A.2d at 725. The Commonwealth Court adopted our approach '[b]ecause this approach has the salutary effect of submitting the issue to the trial judge for initial evaluation during trial, when the proofs are still fresh, and is consistent with past practice and with the current rule governing post-trial practice.' **Id**. Consequently, the Commonwealth Court limited its appellate review in that case to the appellants' challenge to the weight of the evidence, and found any challenges to the sufficiency of the evidence to be waived. **Id**.

Hence, *it is clear that, in order to preserve a challenge to the sufficiency of the evidence, the Haans first were required in this non-jury trial to move **either for** a nonsuit **or a** directed verdict.* **See Youst v. Keck's Food Serv., Inc.,** 94 A.3d 1057, 1071 (Pa.Super.2014). The Haans did not do so. Consequently, any of the Haans' challenges purporting to challenge the sufficiency of the evidence offered to prove the Wells' ownership of Parcel No. 2 are waived.

**Haan**, 103 A.3d at 67-68 (footnotes omitted) (emphasis added).

Here, Engineer did not move for a directed verdict at the close of evidence. And while it moved for a compulsory nonsuit at the close of Association's case, it neglected to raise any economic loss doctrine argument

at that time.[7]  Consequently, Engineer has waived its right to raise the economic loss doctrine in this appeal.  **Haan**, **supra**.

Engineer claims incorrectly that it preserved its motion for judgment n.o.v. on the economic loss doctrine by raising it in preliminary objections and then again in post-verdict motions.  Under **Haan**, however, Engineer was required to move for a compulsory nonsuit or directed verdict to give the trial court the opportunity to decide whether the *trial evidence* was sufficient to go to the jury.  The fact that Engineer filed preliminary objections on the economic loss doctrine is of no moment, because preliminary objections only test whether the complaint states a valid cause of action, not whether the trial evidence is sufficient to go to the jury.

**Meeting House Lane, Ltd. v. Melso**, 628 A.2d 854 (Pa.Super.1993), the decision Engineer cites for the proposition that it preserved the economic loss argument for appeal, is not on point.  The trial court in **Melso** held that the appellant waived all issues in his post-trial motion because the motion failed to specify where he had raised the issues prior to verdict.  This Court held a mere defect in form in post-verdict motions did not result in waiver because the appellant raised all issues in pretrial proceedings or during trial. **Id**., 628 A.2d at 857.  The present case involves a fundamental trial error by counsel for Engineer, not a mere technical defect in the form of post-verdict

---

[7] N.T., 6/14/13, at 22-31.

motions: counsel neglected to argue *during trial* that the *trial evidence* was insufficient as a matter of law under the economic loss doctrine. Counsel's omission results in waiver under **Haan**.

In its second argument on appeal, Engineer contends that the trial court erred in denying judgment n.o.v. for four reasons: (1) Association made no showing that the defects in the building were visible; (2) Association's experts did not testify with the requisite degree of engineering certainty; (3) there was no proof tying the relationship between Engineer's conduct and the amount of money damages caused to Association; and (4) Engineer's conduct in 2006 was too remote in time to constitute the proximate cause of the damages, and there were other intervening causes of harm, such as other inspections conducted after Engineer's failure to uncover defects, and Association's failure to perform proper maintenance after 2006.[8]

Subpart I is a claim that Association failed to prove that Engineer breached the applicable standard of care. Engineer contends that the proper standard of care is a duty to discover visible defects that is embodied in section 4-106 of the UCA, codified at 68 Pa.C.S. § 3404. Brief For Appellant, p. 15. This argument is unconvincing for two reasons: the UCA does not

_____

[8] Because Engineer has grouped these four issues under one heading in its brief, we will refer to them as "Subpart I", "Subpart II", "Subpart III" and "Subpart IV".

provide the applicable standard of care for Engineer, and even if the UCA provides the correct standard, the evidence demonstrates that Engineer breached it.

68 Pa.C.S. § 3404 provides in relevant part:

> (a) The public offering statement of a condominium containing a conversion building must contain …
>
> (1) A statement by the *declarant*, based on a report prepared by an independent registered architect or professional engineer:
>
> (i) describing the age and present condition and, if known or reasonably ascertainable, the dates of construction, installation and major repairs of all structural components and mechanical and electrical installations, including, but not limited to, roofs, plumbing, heating, air conditioning and elevators, material to the use and enjoyment of the condominium; and
>
> (ii) describing the results of the inspection of the units and common elements required pursuant to section 3411(c) (relating to warranty against structural defects) *for visible conditions that adversely affect the health or safety of residential occupants*. The statement should also state the extent to which the report by the architect or professional engineer is based upon a visual inspection of the units as well as the common elements.

68 Pa.C.S. § 3404 (emphasis added). The UCA defines "declarant" as follows:

- 11 -

(1) If the condominium has been created, 'declarant' means:

(i) any person who has executed a *declaration*, or an amendment to a declaration to add additional real estate, other than persons holding interests in the real estate solely as security for an obligation, persons whose interests in the real estate will not be conveyed to unit owners, or, in the case of a leasehold condominium, a lessor who possesses no special declarant rights and who is not an affiliate of a declarant who possesses special declarant rights; or

(ii) any person who succeeds under section 3304 (relating to transfer of special declarant rights) to any special declarant rights.

(2) If the condominium has not yet been created, 'declarant' means any person who offers to dispose of or disposes of his interest in a unit to be created and not previously disposed of.

(3) If a declaration is executed by a trustee of a land trust, 'declarant' means the beneficiary of the trust.

68 Pa.C.S. § 3103. A "declaration" is a document that creates the condominium and defines its basic elements, such as the number of units, boundaries, common elements, *etc*. 68 Pa.C.S. § 3205 (contents of declaration).

The standards prescribed in section 3404 only apply to declarants, *i.e.*, signers of the declaration. Engineer is not itself a "declarant"; it merely provides a report to the declarant about the condition of the condominium. Thus, the standards prescribed under section 3404, including the duty to

report "visible conditions that adversely affect the health or safety of residential occupants," does not apply to Engineer.

Assuming *arguendo* that the "visible condition" standard applies to engineers, Association presented evidence that Engineer overlooked visible defects in the building and failed to mention these defects in its 2006 report. Patrick McCoy, one of Association's experts, testified that Engineer (1) failed to have a licensed engineer perform a sufficient visual assessment and write the report,[9] (2) failed to investigate cracks in the mortar joints which were visible in 2006 and would have led to discovery of distress in the facade,[10] (3) failed to observe visibly corroded iron cast balconies on top of terra cotta, missing mortar joints and severe deterioration in the mortar,[11] (4) failed to comply with the UCA by not reviewing public records of the building,[12] (5) failed to identify issues with rainwater conductors that existed in 2006 and which caused severe water damage and corrosion,[13] and (6) deleted or altered portions of its draft report to cover up these defects.[14]

---

[9] N.T., 6/12/13 (PM), at 31-32, 42-43.

[10] *Id.* at 41-42.

[11] *Id.* at 31-32.

[12] *Id.* at 44-45.

[13] *Id.* at 33-35.

[14] *Id.* at 63-64.
*(Footnote Continued Next Page)*

McCoy testified that Engineer overlooked visible safety hazards during its 2006 inspection and neglected to mention them in its report. According to McCoy, (1) Engineer failed to notice that rain water conductors were failing and causing corrosion on the steel deck[15]; (2) Engineer did not notice "severe deterioration" to the balconettes that "was the same then [in 2006] as when [McCoy] did [his] inspection in 2011, and … some of those joints were opened up and … there was already cracking and mortar that was missing"[16]; (3) Engineer failed to note the lack of maintenance in any facades or windows from 1983 to 2006, even though the trim around the windows was "completely rotten"[17]; and (4) Engineer ignored severe corrosion on the portico in front of the building in 2011.[18]

Thus, even if the "visible condition" standard was the proper test, Association presented sufficient evidence to satisfy it.[19]

_(Footnote Continued)_ ───────────────

[15] *Id*. at 34-35. McCoy testified that he "believe[d]" that a licensed professional engineer would have observed this defect and included it in its report. *Id*. at 35. The verb "believe" did not make his testimony insufficient, because he later testified that all of his opinions were within a reasonable degree of engineering certainty. *Id*. at 70-71.
[16] *Id*. at 41-42.

[17] *Id*. at 49-51.

[18] *Id*. at 55-56.

[19] Engineer not only fails to convince us that section 3404 is the proper standard of care, but he also fails to identify the proper standard or analyze the evidence under the proper standard. Therefore, Engineer has waived
_(Footnote Continued Next Page)_

In Subpart II, Engineer claims that Association's experts failed to testify with the requisite degree of engineering certainty. Engineer waived this argument by failing to make it at the compulsory nonsuit or directed verdict stages. **Haan**, 103 A.3d at 67-68. Even if Engineer preserved this issue, two of Association's experts testified that their opinions were within a reasonable degree of certainty in their respective fields.[20]

Engineer argues in Subpart III that Association failed to prove any relationship between Engineer's conduct and the amount of money damages caused to Association. Engineer disregards McCoy's testimony that the deletions and alterations to the draft report caused the following damages: $287,000 for elevator repairs, $41,448 for providing an adequate accessible entrance, $20,000 to repair steel platform and stairs, and $15,000 to repair corroded beams and cracked concrete in the basement.[21] McCoy also observed that Association would incur $228,808.30 to repair the roof and $65,600 to repair structural defects in the building.[22] Another expert,

_(Footnote Continued)_ —————————

the argument that the evidence fails to satisfy the correct standard of care. **Owens v. Mazzei**, 847 A.2d 700, 705-06 (Pa.Super.2004) (issues waived due to lack of argument in appellate brief).

[20] N.T., 6/12/13 (PM), at 70-71 (McCoy), 82-83 (Nevel).

[21] **Id.** at 67-70.

[22] **Id.** at 27.

William Payne, gave exhaustive testimony about the damage caused to the building,[23] and testified that Association incurred $400,000 in hazard mitigation expenses and $900,000 for waterproofing and aesthetic repairs.[24]

In Subpart IV, Engineer contends that its conduct in 2006 was not the proximate cause of Association's harm, because Engineer's conduct was too remote in time, and there were other intervening causes of harm, such as other inspections conducted after Engineer's failure to uncover defects, and Association's failure to perform proper maintenance after 2006. Engineer has waived this argument by making a different argument on appeal than it made below. Engineer's lone causation argument at the nonsuit stage was that Association was contributorily negligent because it failed to review public documents (a Deed of Façade Easement and title report) that would have alerted Association to any problems. Association, Engineer argued, "[was] on constructive or actual notice of the deed of façade easement," but from 2006 onward, "nobody decided to follow the … mandates of the easement" with "constant inspections, constant vigilance."[25] In this Court, however, Engineer argues that Association ignored Engineer's recommendations for repair work/maintenance, a separate and distinct

---

[23] N.T. 6/13/13, at 17-70.

[24] N.T. 6/13/13, at 17.

[25] N.T. 6/14/13, at 25, 26.

matter from Assocation's failure to follow the easement. Because Engineer failed to argue at the compulsory nonsuit stage that Association ignored its recommendations for repair work/maintenance, it waived this point on appeal. **Haan**, 103 A.3d at 67-68.

In its third and final argument on appeal, Engineer contends that it did not waive its right to appeal the denial of a post-trial motion seeking judgment n.o.v. We have addressed this issue above in the foregoing discussion by identifying several issues that Engineer waived by failing to raise them at the compulsory nonsuit or directed verdict stages of trial.

For these reasons, the trial court properly denied Engineer's post-trial motions seeking judgment n.o.v.

Judgment affirmed at 385 EDA 2014. Appeal quashed at 446 EDA 2014.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/13/2015