POPOVICH, Judge:
This is an appeal from the order of June 15, 1993, entered in the Court of Common Pleas of Allegheny County granting the motion for the appointment of a receiver filed by appellee, Metropolitan Life Insurance Company (“MetLife”). Herein, appellant, Liberty Center Venture (“Venture”), contends that the lower court erred in finding that Venture defaulted under the terms of secured payment obligations with MetLife and then improperly allowed for the appointment of a receiver. Upon review, we affirm.
The record reveals that in December of 1986, MetLife and Grant Liberty Development Group Associates (“GLDGA”) created Venture to own and operate a building complex with offices and a hotel located in downtown Pittsburgh. MetLife and GLDGA possessed undivided interests in Venture of 60% and 40% respectively. Additionally, MetLife made a loan to Venture with principal in the amount of $67,000,000.00. Notes were executed to provide for Venture’s repayment obligations. MetLife’s loan to Venture was also secured by a mortgage. The interest payable on the notes for the offices and the hotel was 14¡é% and 15% respectively. Further, the terms of the mortgage and security agreement authorized the appointment of a receiver in the event of a default. In September, 1990, Venture began making payments at an interest rate of 10% instead of 14}&% and 15%. MetLife refused to accept the payments on the ground that Venture defaulted on its repayment obligations. On *889 March 8, 1991, MetLife instituted a foreclosure action against Venture in the Court of Common Pleas of Allegheny County and sought the appointment of a receiver. Venture maintained that it was not in default because MetLife and GLDGA had agreed to reduce the payments on the notes at an interest rate of 10%.
On October 2, 1991, The Honorable Judith L.A. Friedman of the Court of Common Pleas of Allegheny County held a hearing on MetLife’s motion to appoint a receiver. At that time, suit was pending between GLDGA and MetLife in the United States District Court for the Western District of Pennsylvania. ■ GLDGA alleged that MetLife breached a fiduciary duty and breached a contract. On October 8, 1991, Judge Friedman denied MetLife’s motion to appoint a receiver without prejudice. Judge Friedman found that the action pending in federal court also involved the question of whether a default occurred in the tendering of payments at a lower interest rate. Judge Friedman concluded that in the interest of judicial economy, deference should be given to the federal court’s determination of that issue. Thus, the lower court ruled that the viability of MetLife’s motion to appoint a receiver was contingent upon the finding of a default.
Thereafter, in the federal court action, MetLife moved for summary judgment as to each count of GLDGA’s complaint. On January 4,1993, the Honorable Donald E. Ziegler of the United States District Court for the Western District of Pennsylvania entered an order denying MetLife’s motion for summary judgment as to the breach of fiduciary claims. Judge Ziegler, however, granted MetLife’s motion for summary judgment as to the breach of contract claim. Judge Ziegler found that MetLife did not offer to reduce the interests payable on the notes.
On January 14, 1993, MetLife renewed its motion for appointment of a receiver with the court below and on April 1, 1993, the lower court granted that motion. The lower court determined that the federal court’s decision had collaterally established that Venture was in default of its repayment obligations with MetLife. By order dated June 15, 1993, as modified by order dated June 29, 1993, the court below appointed Grant Street Associates as the receiver. This appeal followed.
Herein, Venture raises the following issues for our review:
1. Whether the Court below erred by finding that a default in a mortgage occurred when it did not allow the property owner to introduce evidence that the alleged default occurred as a result of a breach of fiduciary duty by the lender/partner?
2. Whether the Court below erred by appointing a receiver during the pendency of a foreclosure action and a related federal court action when by its own findings, there were no equitable reasons for appointing a receiver?
3. Whether the Court below erred by not preserving the status quo during the pen-dency of litigation and by instead ordering the receiver to distribute $10,000,000.00 in assets to the lender?
Appellant’s Brief at 13.
We initially recognize that the lower court’s decision to appoint a receiver will not be reversed absent a clear abuse of discretion. See Bogosian v. Foerderer Tract Committee, Inc., 264 Pa.Super. 84, 89, 399 A.2d 408, 411 (1979) (“abuse of discretion” standard of review applies to trial court’s decision to appoint a receiver). Fervently embracing that standard of review, we proceed in addressing the merits of appellant’s contentions.
First, Venture maintains that the court below improperly precluded it from introducing evidence revealing that the default occurred as a result of MetLife’s breach of fiduciary duty to the partnership. Venture advances the following argument to buttress its claim that the lower court committed an error of law:
[B]y refusing to stay action on the request for a receiver until termination of the federal court proceeding or hearing evidence itself on the breach of fiduciary duty defense, the [lower court] held that a partner/lender in a real estate venture may through wrongful actions, cause the partnership to be in default and then pursue its default remedies under the mortgage. *890 Such an interpretation is a perversion of the entire concept of fiduciary duties.
Appellant’s Brief at 23. MetLife argues, however, that the lower court afforded Venture the opportunity to introduce evidence at the hearing held on October 2, 1991, to support Venture’s argument that the default occurred as a result of MetLife’s breach of fiduciary duty. Indeed, our review of the notes of testimony taken at that hearing reveals that Venture faded to introduce evidence supporting that claim.[1] MetLife also counters Venture’s assertion by directing our Court’s attention to the language provided in Part I, § 5.05 of the mortgage. That section states as follows:
Metropolitan Life Insurance Company, in its capacity as Mortgagee, shall not be deemed to have additional duties or obligations, nor shall its rights be diminished or otherwise adversely affected by reason of Metropolitan Life Insurance Company being, or becoming, a partner of the Mortgagor.
R. 68a. MetLife contends that under principles of contract law, Venture is bound by the aforementioned section of the Mortgage. Additionally, MetLife defends its rights as a mortgagee by maintaining that any alleged breach of fiduciary duty arose subsequent to and apart from the execution of the mortgage.
Under Pennsylvania law, “parties have the right to make their own contract, and it is not the function of a court to rewrite it or to give it a construction in conflict with the accepted and plain meaning of the language used.” Meeting House Lane, Ltd. v. Melso, 427 Pa.Super. 118, 126, 628 A.2d 854 (1993), citing, Amoco Oil Co. v. Snyder, 505 Pa. 214, 221, 478 A.2d 795, 798 (1984); Hagerty v. William Akers, Jr. Co., 342 Pa. 236, 239, 20 A.2d 317, 318 (1941). “It is, ..., clear that the terms of the mortgage contract cannot be altered or impaired by either the legislature or the courts, and this applies to the remedies, or specific provision for its enforcement, as well as to the obligation to pay the bonded indebtedness.” Philadelphia Trust Co. v. Northumberland County Traction Co., 258 Pa. 152, 167, 101 A, 970, 974-75 (1917). See Galey v. Guffey, 248 Pa. 523, 94 A. 238 (1915) (enforcement of provision in mortgage contract that competent parties solemnly and intelligently entered into); First Philadelphia Realty Corp. v. Albany Sav. Bank, 609 F.Supp. 207 (E.D.Pa.1985) (court must give effect to the intent of the parties where terms of mortgage contract are free from ambiguities).
Upon evaluating the language of the mortgage in its totality, see Melso, 427 Pa.Super. at 118, 628 A.2d at 857 (contract must be construed as a whole), we find that the parties clearly and unambiguously intended that MetLife retained rights as a mortgagee irrespective of MetLife’s additional role as a partner to the business arrangement. We are not prepared to disturb the terms of the mortgage which were agreed to by competent parties. Further, we find that Venture’s claim that MetLife breached a fiduciary duty does not nullify MetLife’s rights as a mortgagee since this allegation arose apart from the execution of the mortgage. See Chrysler First Bus. Credit Corp. v. Gourniak, 411 Pa.Super. 259, 601 A.2d 338 (1992) (mortgagors’ allegations of fraudulent misrepresentation and unjust enrichment in mortgage foreclosure action were not part of or incident to the creation of the mortgage, and, thus, could not be asserted against mortgagee). Consequently, we conclude that the lower court did not improperly preclude Venture from introducing evidence in support of its claim that the default occurred as a result of MetLife’s conduct.
Because we find that Venture’s second and third contentions raised herein both challenge the viability of the remedies provided under the mortgage, we address them concurrently. The interest payable on the notes for the offices and the hotel was 14$% and 15% respectively. R. 22b, 48b. Part I, § 2.01 of the mortgage provides that unpaid principal and interest constitute a default. *891 R. 48a. Here, upon the federal court’s finding that MetLife and GLDGA did not agree to lower the interest rate, the court below determined that the federal court’s decision had collaterally established that Venture was in default of its repayment obligations with MetLife. The lower court then recognized the enforceability of Part I, § 3.03(a) of the mortgage. That section expressly states:
If an Event of Default shall have occurred and be continuing, Mortgagee, upon application to a court of competent jurisdiction, shall be entitled, without notice and without regard to the adequacy of any security for the repayment of the indebtedness evidenced by the Note and/or secured by this mortgage or the solvency of any party bound for its payment, to the appointment of a receiver(s) to take possession of and to operate the Property (or any portion thereof) and to collect the Rents and Profits....
R. 52a.
As we noted above, terms of a mortgage agreement are binding on the parties. “Great as are the equity powers of the court, it is yet to be suggested that included in these powers is the power to nullify or impair a legal contract solemnly and intelligently entered into between competent parties.” Galey, 248 Pa. at 528, 94 A. at 240. We find that the terms of the mortgage clearly provide for the appointment of a receiver in the event of a default. Moreover, we reject Venture’s contention that the lower court erred in directing the receiver to remit $10,000,000.00 to MetLife. That amount represented the payments calculated at a ten percent interest rate of which MetLife declined to accept as payments in full. R. 345a-347a. The lower court determined that $10,000,000.00 was in excess of amounts the receiver deemed necessary for ongoing operation of the property. Part I, § 3.03(a) of the mortgage authorizes the receiver to remit to MetLife funds in excess of the amounts needed for the ongoing operation of the mortgaged property. R. 52a-54a. Accordingly, we find that the lower court did not abuse its discretion in enforcing the remedies under the mortgage.
Having scrutinized Venture s arguments and finding them to lack merit, we, thus, hold that the lower court did not abuse its discretion in granting MetLife’s motion to appoint a receiver.
Order affirmed.

. At the hearing held on October 2, 1991, Venture offered the testimony of one witness. Rodrigo H. Marques, a representative of one of the managing partners of GLDGA, testified solely in support of Venture's contention that MetLife offered to reduce the interest rate payable on the notes to 10%. Hearing N.T. 10/2/91 at 45.