J. A09011/16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| CFS-4 II, LLC, A DELAWARE LLC AND | : | IN THE SUPERIOR COURT OF |
| ASSIGNEE OF FIRST NATIONAL BANK | : | PENNSYLVANIA |
| OF PENNSYLVANIA | : | |
| | : | |
| v. | : | |
| | : | |
| PHOENIX ESTATES, A PENNSYLVANIA | : | |
| GENERAL PARTNERSHIP, | : | No. 1637 MDA 2015 |
| | : | |
| Appellant | : | |

Appeal from the Order Entered August 26, 2015,
in the Court of Common Pleas of Luzerne County
Civil Division at No. 2012-3725

BEFORE:  FORD ELLIOTT, P.J.E., JENKINS AND PLATT,* JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED AUGUST 29, 2016**

Phoenix Estates appeals the order of the Court of Common Pleas of

Luzerne County that granted the motion for appointment of receiver of

CFS-4 II, LLC ("CFS"), and allowed CFS to exercise its right to appoint

NAI Geis Realty Group, Inc. ("NAI") as receiver.

The facts as recounted by the trial court are as follows:

> On March 31, 2008, Phoenix Estates, a
> Pennsylvania Limited Partnership, was the owner in
> fee of commercial real estate located at East Union
> and North Washington Streets, Wilkes-Barre,
> Luzerne County, PA, and more particularly described
> in Luzerne County Recorder of Deeds Office at
> Record Book 2555, page 438.  The mortgaged
> property is utilized as a parking lot.  On March 31,
> 2008, First National Bank of Pennsylvania (Lender)
> made a demand loan (the "Loan") to Thomas J.

_____

* Retired Senior Judge assigned to the Superior Court.

Greco ("Greco["]) in the original principal amount of $125,000.00 evidenced by a demand Promissory Note dated March 31, 2008.

On March 31, 2008 Phoenix Estates executed a commercial guaranty in favor of Lender, unconditionally guarantying and becoming surety for Greco's obligations under the Loan. The subject Promissory Note was signed on March 31, 2008. Also, the subject Guaranty Agreement was executed by Thomas J. Greco on behalf of Phoenix Estates. On March 31, 2008, Phoenix Estates executed an open end mortgage and security agreement on the mortgaged property which was duly recorded in the Office of the Recorder of Deeds of Luzerne County in Record Book 3008, Page 84218. Further, Phoenix Estates executed, made and delivered to Lender an Assignment of Rents and Leases with respect to the mortgaged property on April 7, 2008 which was duly recorded in the Office of the Recorder of Deeds on April 17, 2008 as Instrument Number 5816436, in Book 3008, Page 88041.

On March 23, 2012, [Lender] filed a Complaint in Mortgage Foreclosure against Phoenix Estates, seeking judgment against Phoenix Estates in the principal amount of $118,444.50 plus accrued interest from February 29, 2012 through the date of distribution of Sheriff's sale, accruing in the approximate amount of $20.81 per diem, and reasonable attorney's fees and costs.

On June 29, 2012, Phoenix Estates filed an Answer and New Matter and Counterclaims. Phoenix denies it is in default under the terms of the mortgage. On September 29, 2014, [Lender] assigned all its right, title and interest in and to the loan and the mortgage, more specifically, [Lender], to [CFS], recorded in the Office of the Recorder of Deeds of Luzerne County at Instrument Number 201457427 in Mortgage Book 3014, page 201428 as well as in the Complaint in Commercial Mortgage Foreclosure docketed to 3725/2012. Also, [Lender] assigned the subject Assignment of Rents and

Leases for the mortgaged property to [CFS] on said date.

In the event of a default, the Mortgage provides certain rights and remedies to the Lender, any one or more of which can be exercised at the Lender's option, in addition to any other rights or remedies provided by law:

. . . .

["]Appoint Receiver.  Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the indebtedness. The receiver may serve without bond if permitted by law.  Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the indebtedness by a substantial amount.  Employment by Lender shall not disqualify a person from serving as receiver."

Prior to the assignment of this mortgage to [CFS], the last payment that [Lender] received on this account was dated May 7, 2012.  That payment information is based upon a Loan History Report, a business record of [Lender], maintained in the regular course of business, which reflects all payments made on the account, along with the corresponding balances, and reflects the amount due and owing by the Borrower.  The entries on the Loan History are contemporaneously made at or about the time of the transactions noted.  At no time since the execution of the Assignment of this Mortgage has Phoenix Estates made any payments of principal and interest on this account to [CFS].

[CFS] maintains that [Phoenix Estates] is in default on the mortgage and guaranty and note and

- 3 -

that the Borrower is not paying taxes and payments of principal or interest on this account. . . .

. . . .

The mortgaged property is a parking lot, in which users pay monthly to park in the lot. There is no subsequent mortgage on this property. [CFS] seeks a receiver to collect rents, market the property and maximize it. The bank would be responsible for paying for the receiver. The rents collected would be applied to the taxes, utilities, and any excess income on a monthly or quarterly basis would be applied to the indebtedness to the original . . . mortgage[].

Trial court opinion, 11/25/15 at 1-7.

Following oral argument and the receipt of briefs, the trial court granted CFS's motion and allowed it to appoint NAI as receiver. The trial court reasoned that Phoenix Estates was in default under the terms of the mortgage because Thomas Greco ("Greco") had not made any payments on the loan since the assignment of the mortgage to CFS and had not made a payment to First National Bank of Pennsylvania since May 7, 2012. The trial court explained the grant of the motion to allow the appointment of NAI as receiver:

The contract in place, the mortgage, expressly provides that in the event of a default of the mortgage conditions, a receiver may be appointed to preserve the property. The Guaranty, Mortgage and Assignment of Rent documents were freely and voluntarily executed by [Phoenix Estates] in order to secure the obligation of [Greco] on the Note. [Phoenix Estates] is not denying [Greco] executed same, as the General Partner of Phoenix Estates nor is it arguing the general partnership's competency or ability to have executed the collateral documents.

> [CFS] appropriately cited to the case of **Metropolitan Life**,[1] in which the court states that when there is a voluntary assent to the terms and conditions of the mortgage, it is the obligation of the court to enforce those terms. [Greco] stopped paying on the note which is secured by the mortgage. As such, [Phoenix Estates] as the guarantor is obligated to satisfy [Greco's] obligation. During the time of default[,] [Phoenix Estates] continues to rent out spaces in the parking lot, and collect income and no money has been paid to the bank in breach of the mortgage obligations.
>
> [CFS] requests the appointment of [NAI], a qualified commercial real estate broker and property management entity to act as Receiver. This request comports with the express terms of the Loan documents which allow said remedy upon [Phoenix Estates] being in a default status in failing to meet its obligations to the Lender. Under the overall circumstances, [Phoenix Estates] cannot justify any legal basis to defeat [CFS's] request given that it has failed to provide any accounting whatsoever, as to the disposition of monthly rental payments being made to it . . . .
>
> This Court is not prepared to disturb the terms of the mortgage. The parties are competent and they agreed to the very terms. Terms of a mortgage agreement are binding on the parties. . . . This Court finds that the terms of the mortgage clearly provide for the appointment of a receiver in the event of a default.

Trial court opinion, 11/25/15 at 8-9.

Phoenix Estates raises the following issues for this court's review:

> A. Whether the Lower Court abused its discretion and committed an error of law by the granting of the Motion for the Appointment of a

---

[1] **Metropolitan Life Ins. Co. v. Liberty Center Venture**, 650 A.2d 887 (Pa.Super. 1994).

Receiver when there has been no judicial determination that a default has occurred?

B. Whether the Lower Court abused its discretion and committed an error of law by the granting of the Motion for Appointment of a Receiver when [CFS] has an adequate remedy at law, the facts, circumstances and equities of the matter **sub judice** do not support the appointment of a receiver, that greater irreparable damage will result to [Phoenix Estates] with the appointment of a receiver and the right to a receiver is not free from doubt?

C. Whether the Lower Court abused its discretion and committed an error of law by the granting of the Motion for Appointment of a Receiver when a judge of coordinate jurisdiction entered an Order granting [Phoenix Estates'] Petition to Open Judgment based on the Judge's determination that [Phoenix Estates] had a meritorious defense to the claims of default, the same claims set forth in the mortgage foreclosure action?

Appellant's brief at 4.

The trial court's decision to appoint a receiver will not be reversed absent a clear abuse of discretion. **Metropolitan**.

An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused.

**Fienke v. Huntington**, 111 A.3d 1197, 1200 (Pa.Super. 2015), quoting

**Stumpf v. Nye**, 950 A.2d 1032, 1036 (Pa.Super. 2008).

Initially, Phoenix Estates contends that CFS failed to prove that it was entitled to appointment of a receiver because it did not establish that an emergency existed, that the right to receivership was free from doubt, that there had been irreparable damage, that there was no adequate remedy at law, that the rights of creditors and shareholders would not be interfered with, and that greater damage would result in the absence of the appointment of a receiver. These factors appear in cases cited by Phoenix Estates such as ***Tate v. Philadelphia Transportation Co.***, 190 A.2d 316, 321 (Pa. 1963), and ***McDougal v. Huntington & Broad Top Mountain Railroad and Coal Co., Inc.***, 143 A. 574 (Pa. 1928).

While these cases may set forth conditions under which a receiver may be appointed, this was not the basis for the trial court's determination that a receiver could be appointed in this case. The trial court determined that CFS could appoint a receiver because the parties contracted for that possibility in the mortgage document in the event of a default.

The trial court relied on ***Metropolitan***, which Phoenix Estates also looks to for support. In ***Metropolitan***, Metropolitan Life Insurance Company ("Metlife") and Grant Liberty Development Group Associates ("GLDGA") created the Liberty Center Venture ("Liberty") to own and operate a building complex with offices and a hotel in downtown Pittsburgh. Metlife owned 60 percent of Liberty, and GLDGA owned 40 percent. Metlife also loaned Liberty $67,000,000. Notes were issued with interest payable at

the rate of 14½ percent for the offices and 15 percent for the hotel. Metlife's loan was secured by a mortgage. The mortgage and the security agreement both authorized the appointment of a receiver in the event of a default. In September 1990, Liberty began to make payments at the interest rate of 10 percent instead of the agreed-upon rate. Metlife did not accept the payments on the basis that Liberty defaulted on its obligations. On March 8, 1991, Metlife commenced foreclosure proceedings in the Court of Common Pleas of Allegheny County and also sought the appointment of a receiver. Liberty asserted that it was not in default because Metlife and GLDGA had agreed to reduce the interest rate to 10 percent. The Court of Common Pleas of Allegheny County initially denied the motion without prejudice because a pending action in federal court centered on the question of whether Liberty defaulted by paying at a lower rate. The Court of Common Pleas of Allegheny County ultimately granted the motion for appointment of a receiver after the United States District Court for the Western District of Pennsylvania determined that Liberty was in default. *Metropolitan*, 650 A.2d at 888-889.

Liberty appealed to this court. One of the issues Liberty raised concerned whether the Court of Common Pleas of Allegheny County erred when it granted the motion to appoint a receiver. *Id.* at 889. This court affirmed after it determined that the parties contractually agreed in the

mortgage that a receiver could be appointed in the event of a default. *Id.* at 890. This court explained:

> Under Pennsylvania law, "parties have the right to make their own contract, and it is not the function of a court to rewrite it or to give it a construction in conflict with the accepted and plain meaning of the language used." . . . . "It is, . . ., clear that the terms of the mortgage contract cannot be altered or impaired by either the legislature or the courts, and this applies to the remedies, or specific provision for its enforcement as well as to the obligation to pay the bonded indebtedness." . . .

*Id.* at 889 (citations omitted).

Here, Phoenix Estates argues that there was no finding of default and the matter of the alleged default was still pending in an action regarding the confession of judgment matter and other related cases. However, in its answer to the motion for appointment of a receiver, Phoenix Estates admitted that no payments have been made since the assignment of the mortgage to CFS in September 2014. The trial court noted this fact and also stated that, prior to the assignment, First National Bank of Pennsylvania had not received a payment since May 2012. (**See** Exhibit A to Plaintiff's Motion for Appointment of a Receiver, June 29, 2015.) The trial court also explained that failure to make payments constituted a default under the mortgage. The trial court also noted that under the mortgage a remedy for default was appointment of a receiver. This court cannot agree with Phoenix Estates' argument. The trial court did not abuse its discretion when it found

that Phoenix Estates and/or Greco were in default and that CFS was entitled to the appointment of a receiver.

Phoenix Estates next contends that because a court of coordinate jurisdiction granted its petition to open judgment after First National Bank of Pennsylvania confessed judgment on the demand promissory note, the trial court abused its discretion when it found that Phoenix Estates was in default and granted the motion to appoint a receiver here.

> Generally, the coordinate jurisdiction rule commands that upon transfer of a matter between trial judges of coordinate jurisdiction, a transferee trial judge may not alter resolution of a legal question previously decided by a transferor trial judge. . . . More simply stated, judges of coordinate jurisdiction should not overrule each other's decisions. . . .

***Zane v. Friends Hospital***, 836 A.2d 25, 29 (Pa. 2003) (citations omitted).

Nothing in the record indicates that the trial court overruled a prior decision that indicated that Phoenix Estates and/or Greco did not default on the terms of the mortgage. While it appears that the parties have been involved in a great deal of litigation, the record before this court does not establish an abuse of discretion by the trial court concerning the coordinate jurisdiction rule.[2]

Order affirmed.

---

[2] Finally, Phoenix Estates again argues that CFS failed to establish the factors necessary to warrant the appointment of a receiver without acknowledging that the parties contracted for the appointment of a receiver in the event of default if First National Bank of Pennsylvania and, subsequently, CFS, chose to employ that remedy.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/29/2016