J. A09010/16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| CFS-4 II, LLC, A DELAWARE LLC AND | : | IN THE SUPERIOR COURT OF |
| ASSIGNEE OF FIRST NATIONAL BANK | : | PENNSYLVANIA |
| OF PENNSYLVANIA | : | |
| | : | |
| v. | : | |
| | : | |
| THOMAS GRECO, | : | |
| A/K/A THOMAS J. GRECO, | : | No. 1636 MDA 2015 |
| | : | |
| Appellant | : | |

Appeal from the Order Entered August 26, 2015,
in the Court of Common Pleas of Luzerne County
Civil Division at No. 3716 of 2012

BEFORE:  FORD ELLIOTT, P.J.E., JENKINS AND PLATT,* JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED AUGUST 29, 2016**

Thomas Greco, also known as Thomas J. Greco ("Greco"), appeals the order of the Court of Common Pleas of Luzerne County that granted the motion for appointment of receiver of CFS-4 II, LLC ("CFS") and allowed CFS to exercise its right to appoint NAI Geis Realty Group, Inc. ("NAI") as receiver.

The facts as recounted by the trial court are as follows:

> On or about August 15, 2002, [Greco] acquired a commercial property located at 101-105 N. Main Street, Wilkes-Barre, Luzerne County, [Pennsylvania], and more particularly described in Luzerne County Recorder of Deeds Office at Record Book 3002, Page 203671. ("Premises")  The Premises is improved with an office building with office space leased and partially occupied by the

---

* Retired Senior Judge assigned to the Superior Court.

Commonwealth of Pennsylvania. The Premises is also improved with residential units which appear to be leased and occupied.

Also, on the aforesaid date, First National Bank of Pennsylvania (hereinafter "Lender") made a loan to [Greco] in the principal amount of $1,600,000.00. ("Loan") Said Loan is evidenced by a Promissory Note dated August 15, 2002, and amended on October 12, 2007. As collateral for said Loan, [Greco] executed an Open End construction Mortgage conveying a security interest in the Premises to the Lender which was duly recorded in the Luzerne County Recorder of Deeds Office in Record Book 3002, Page 203669 ("Mortgage"). Said Mortgage remains open of record. Also, on August 15, 2002, [Greco] executed an Assignment of Rents and Leases with respect to the Premises which was recorded in the Luzerne County Recorder of Deeds Office in Record Book 3002, Page 203688.

The Mortgage provides certain rights and remedies to the Lender, any one or more of which can be exercised at the Lender's option in the event of default, in addition to any other rights or remedies provided by law. Lender declared a Default under the Note and commenced this action. The Mortgage allows the Lender in the event of Default to exercise the following:

. . . .

["]Appoint Receiver. Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the indebtedness by a substantial

amount. Employment by Lender shall not disqualify a person from serving as receiver."

[Greco] contends that there is a subsequent mortgage on the property dated December 23, 2004, and recorded on January 10, 2005 in Luzerne County Recorder of Deeds Office at Record Book 3005, Page 5963 and that this subsequent mortgage contains different terms and conditions regarding the collection of rents.

Significantly, the mortgage dated December 23, 2004 provides, with regard to Leases and Rents, the following:

"Assignments of Leases and Rents. Mortgagor may collect, receive, enjoy and use the Rents so long as Mortgagor is not in default. Mortgagor will not collect in advance any Rents due in future lease periods, unless Mortgagor first obtains Lenders' written consent. Upon default, Mortgagor will receive any Rents in trust for Lender and Mortgagor will not commingle the Rents with any other funds. When Lender so directs, Mortgagor will endorse and deliver any payments of Rents from the Property to lender. Amounts collected will be applied at Lenders' discretion to the Secured Debts, the cost of managing, protecting and preserving the Property, and other necessary expenses. Mortgagor agrees that this Security Instrument is immediately effective between Mortgagor and Lender and effective as to third parties on the recording Assignment. . ."

The parties agree that a legal determination must be made as to the applicable mortgage and the respective language contained therein. Presently, [CFS] contends that a default has occurred and is continuing to occur while [Greco] denies that any event of default has occurred.

On March 23, 2012, Lender initiated a civil action by filing a Complaint in Mortgage Foreclosure alleging default under the Mortgage, and seeking judgment and foreclosure against [Greco] in the

amount of $1,164,417.63 plus accrued interest from February 29, 2012 through the date of distribution of Sheriff's sale, accruing in the approximate amount of $224.34 per diem, and reasonable attorney's fees and costs. On June 29, 2012 [Greco] filed an Answer and New Matter denying a default and asserting various counterclaims and defenses.

On September 29, 2014, Lender assigned all of its right, title and interest in and to the Loan, including, but not limited to, the pending commercial mortgage foreclosure action to [CFS] . . . . Included in the subject assignment, was the Assignment of Rents and Leases for the mortgaged property. At no time since the Assignment of the Loan to [CFS] has [Greco] made any payments of principal or interest on this account.

[CFS] maintains that [Greco] is in default of the mortgage and that [Greco] is not paying taxes and payments of principal or interest on this account. [Greco] maintains income from the Commonwealth of Pennsylvania leases and the residential tenants is being utilized to pay taxes, utilities, insurance, maintenance, upkeep, and managing the property.

Trial court opinion, 11/25/15 at 1-7.

Following oral argument and the receipt of briefs, the trial court granted CFS's motion and allowed it to appoint NAI as receiver. The trial court reasoned that Greco was in default under the terms of the mortgage because he had not made any payments on the loan since the assignment of the mortgage to CFS and had not made a payment to First National Bank of Pennsylvania since July 23, 2012. The trial court explained the grant of the motion to allow the appointment of NAI as receiver:

[CFS] requests the appointment of [NAI], a qualified commercial real estate broker and property management entity to act as Receiver. This request comports with the express terms of the Loan documents which allow said remedy upon [Greco] being in a default status in failing to meet its obligation to the Lender. Moreover, under the overall circumstances, [Greco] cannot justify any equitable basis to defeat [CFS's] request given that it has failed to provide any accounting whatsoever as to the disposition of monthly rental payments being made to it by the Commonwealth or any other residential tenants.

The Junior Mortgage, the 2004 Mortgage, remains open. It is subordinate to and does not in any way alter the terms and conditions of the original mortgage. The original loan still has priority and the junior loan has not superseded it nor was it integrated into the mortgage.

This Court is not prepared to disturb the terms of either mortgage. [Greco] is a competent individual and agreed to the very terms. Terms of a mortgage agreement are binding on the parties. . . . This Court finds that the terms of the mortgage clearly provide for the appointment of a receiver in the event of a default.

Trial court opinion, 11/25/15 at 12-13.

Greco raises the following issues for this court's review:

A.    Whether the Lower Court abused its discretion and committed an error of law by the granting of the Motion for the Appointment of a Receiver when there has been no judicial determination that a default has occurred?

B.    Whether the Lower Court abused its discretion and committed an error of law by the granting of the Motion for Appointment of a Receiver when [CFS] has an adequate remedy at law, the facts, circumstances and equities of the

matter ***sub judice*** do not support the appointment of a receiver, that greater irreparable damage will result to [Greco] with the appointment of a receiver and the right to a receiver is not free from doubt?

C. Whether the Lower Court abused its discretion and committed an error of law by the granting of the Motion for Appointment of a Receiver when a judge of coordinate jurisdiction entered an Order granting [Greco's] Petition to Open Judgment based on the Judge's determination that [Greco] had a meritorious defense to the claims of default, the same claims set forth in the mortgage foreclosure action?

Appellant's brief at 4.

The trial court's decision to appoint a receiver will not be reversed absent a clear abuse of discretion. ***Metropolitan Life Ins. Co. v. Liberty Center Venture***, 650 A.2d 887 (Pa.Super. 1994).

An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused.

***Fienke v. Huntington***, 111 A.3d 1197, 1200 (Pa.Super. 2015), quoting ***Stumpf v. Nye***, 950 A.2d 1032, 1036 (Pa.Super. 2008).

Initially, Greco contends that CFS failed to prove that it was entitled to appointment of a receiver because it did not establish that an emergency existed, that the right to receivership was free from doubt, that there had been irreparable damage, that there was no adequate remedy at law, that the rights of creditors and shareholders would not be interfered with, and

that greater damage would result in the absence of the appointment of a receiver. These factors appear in cases cited by Greco such as **Tate v. Philadelphia Transp. Co.**, 190 A.2d 316, 321 (Pa. 1963), and **McDougal v. Huntington & Broad Top Mountain R.R. and Coal Co., Inc.**, 143 A. 574 (Pa. 1928).

While these cases may set forth conditions under which a receiver may be appointed, these conditions were not the basis for the trial court's determination that a receiver could be appointed. The trial court determined that CFS could appoint a receiver because the parties contracted for that possibility in the mortgage document in the event of a default.

The trial court relied on **Metropolitan**, which Greco also looks to for support. In **Metropolitan**, Metropolitan Life Insurance Company ("Metlife") and Grant Liberty Development Group Associates ("GLDGA") created the Liberty Center Venture ("Liberty") to own and operate a building complex with offices and a hotel in downtown Pittsburgh. Metlife owned 60 percent of Liberty, and GLDGA owned 40 percent. Metlife also loaned Liberty $67,000,000. Notes were issued with interest payable at the rate of 14½ percent for the offices and 15 percent for the hotel. Metlife's loan was secured by a mortgage. The mortgage and the security agreement both authorized the appointment of a receiver in the event of a default. In September 1990, Liberty began to make payments at the interest rate of 10 percent instead of the agreed-upon rate. Metlife did not accept the

payments on the basis that Liberty defaulted on its obligations. On March 8, 1991, Metlife commenced foreclosure proceedings in the Court of Common Pleas of Allegheny County and also sought the appointment of a receiver. Liberty asserted that it was not in default because Metlife and GLDGA had agreed to reduce the interest rate to 10 percent. The Court of Common Pleas of Allegheny County initially denied the motion without prejudice because a pending action in federal court centered on the question of whether Liberty defaulted by paying at a lower rate. The Court of Common Pleas of Allegheny County ultimately granted the motion for appointment of a receiver after the United States District Court for the Western District of Pennsylvania determined that Liberty was in default. ***Metropolitan***, 650 A.2d at 888-889.

Liberty appealed to this court. One of the issues Liberty raised concerned whether the Court of Common Pleas of Allegheny County erred when it granted the motion to appoint a receiver. ***Id.*** at 889. This court affirmed after it determined that the parties contractually agreed in the mortgage that a receiver could be appointed in the event of a default. ***Id.*** at 890. This court explained:

> Under Pennsylvania law, "parties have the right to make their own contract, and it is not the function of a court to rewrite it or to give it a construction in conflict with the accepted and plain meaning of the language used." . . . . "It is, . . ., clear that the terms of the mortgage contract cannot be altered or impaired by either the legislature or the courts, and this applies to the remedies, or specific provision for

> its enforcement as well as to the obligation to pay the bonded indebtedness." . . .

*Id.* at 889 (citations omitted).

Here, Greco argues that there was no finding of default and the matter of the alleged default was still pending in an action regarding confession of judgment and other related cases. However, in his answer to the motion for appointment of a receiver, Greco admitted that he had not made any payments since the assignment of the mortgage to CFS in September 2014. The trial court noted this fact and also noted that failure to make payments under the mortgage constituted a default. The trial court also noted that under the mortgage a remedy for default was appointment of a receiver. This court cannot agree with Greco's argument. The trial court did not abuse its discretion when it found that Greco was in default and that CFS was entitled to the appointment of a receiver.

Greco next contends that because a court of coordinate jurisdiction granted Greco's petition to open judgment based on the court's determination that Greco had a meritorious defense to the claims of default and confession of judgment in another proceeding involving a promissory note, the trial court abused its discretion when it found Greco was in default and granted the motion to appoint a receiver.

> Generally, the coordinate jurisdiction rule commands that upon transfer of a matter between trial judges of coordinate jurisdiction, a transferee trial judge may not alter resolution of a legal question previously decided by a transferor trial judge. . . .

> More simply stated, judges of coordinate jurisdiction should not overrule each other's decisions. . . .

*Zane v. Friends Hospital*, 836 A.2d 25, 29 (Pa. 2003) (citations omitted.)

Nothing in the record indicates that the trial court overruled a prior decision of a court of coordinate jurisdiction that Greco did not default on the terms of the mortgage. Although the record before this court is less than clear, it appears that First National Bank of Pennsylvania filed a complaint in confession of judgment and asserted that Greco was in default under a promissory note for $1,600,000 because Greco defaulted on other obligations owed to the bank, defaulted on obligations owed to third parties, and failed to provide financial information to the bank. The promissory note contained a confession of judgment clause. Greco petitioned to open and/or strike the judgment entered by confession, asserted that he was not in default, and asserted various defenses. On April 23, 2013, the Honorable Fred A. Pierantoni, III, of the Court of Common Pleas of Luzerne County granted Greco's petition.

Greco's reliance on this order is misplaced. The order opening a confessed judgment was issued in relation to a promissory note. The trial court's order granting the motion for appointment of a receiver was based on express language contained in a different financial instrument, the mortgage, which authorized the appointment of a receiver in the event of a default. Further, in the present matter, Greco admitted that he had not made any payments on the mortgage since the assignment to CFS, a clear

default. The trial court did not abuse its discretion with respect to the coordinate jurisdiction rule.

Next, Greco continues to ignore the express language of the mortgage which authorizes the appointment of a receiver in the event of default and ignores that the trial court found that Greco was in default for failure to make payments. Greco argues that the second mortgage, the Open-End Mortgage, dated December 23, 2004, did not contain the language regarding the appointment of a receiver and the language in the more recent mortgage should control.

The trial court addressed this issue: "The Junior Mortgage, the 2004 Mortgage, remains open. It is subordinate to and does not in any way alter the terms and conditions of the original mortgage. The original loan still has priority and the junior loan has not superseded it nor was it integrated into the mortgage." (Trial court opinion, 11/25/15 at 12.) A review of the Open-End Mortgage in the record confirms the trial court's conclusion. The trial court did not abuse its discretion.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/29/2016