J-S27002-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| SKW-B ACQUISITIONS SELLER C, LLC, AS SUCCESSOR TO FS RIALTO 2019-FL 1 HOLDER, LLC | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| STOBBA RESIDENTIAL ASSOCIATES, L.P. AND STOBBA ASSOCIATES, L.P. | |
| Appellees | No. 73 EDA 2022 |

Appeal from Order dated December 13, 2021
In the Court of Common Pleas of Philadelphia County,
Civil Division, at No. 210501951

_____

| | |
|---|---|
| SKW-B ACQUISITIONS SELLER C, LLC, AS SUCCESSOR TO FS RIALTO 2019-FL 1 HOLDER, LLC | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| STOBBA RESIDENTIAL ASSOCIATES, L.P. AND STOBBA ASSOCIATES, L.P. | |
| Appellants | No. 101 EDA 2022 |

Appeal from Order dated December 13, 2021
In the Court of Common Pleas of Philadelphia County,
Civil Division, at No. 210501951

BEFORE:  STABILE, J., NICHOLS, J., and SULLIVAN, J.

MEMORANDUM BY STABILE, J.:                    **FILED MARCH 1, 2023**

FS-Rialto 2019-FL 1 Holder, LLC brought this action for breach of

contract against Stobba Residential Associates, L.P. and Stobba Associates

(collectively "Borrower"), alleging that Borrower defaulted under a promissory note and loan agreement. SKW-B Acquisitions Seller C, LLC ("Lender") is the successor in interest to FS-Rialto 2019-FL 1 Holder, LLC. Borrower is the owner of residential and commercial properties at 200-210 Lombard Street in Philadelphia. Lender moved for appointment of a receiver, asserting, *inter alia*, that Borrower failed to make monthly payments on the note and instructed Borrower's commercial tenants to pay rent into Borrower's bank account instead of the account specified in the loan agreement. On December 13, 2021, following two evidentiary hearings, the court issued a memorandum and order in which it declined to appoint a receiver. The court did, however, order alternative relief by directing Borrower to instruct commercial tenants to pay ongoing rents into the account specified in the loan agreement and instructing Borrower to account for all rents deposited into Borrower's account.

Lender appeals the portion of the order denying its motion for appointment of a receiver. Borrower cross-appeals the portion of the order granting Lender alternative relief.[1] For the reasons provided below, we vacate the court's order and remand for further proceedings.

On August 2, 2019, Borrower executed a loan agreement with FS CREIT Originator LLC ("Original Lender") evidencing a $24,250,000 loan to Borrower.

---

[1] The caption of Borrower's notice of appeal listed FS-Rialto 2019-FL 1 Holder, LLC as Appellee. The proper appellee in this appeal should be SKW-B Acquisitions Seller C, LLC, successor in interest to FS-Rialto 2019-FL 1 Holder, LLC. We have corrected the caption accordingly in Borrower's appeal at 101 EDA 2022.

The loan was evidenced by a promissory note dated August 2, 2019 that Borrower executed in favor of Original Lender. The Loan is secured by an open-end mortgage, assignment of leases and rents, security agreement and fixture filing, dated July 30, 2019 and effective as of August 2, 2019, from Borrower to Original Lender. The mortgage created a lien in favor of Original Lender on multiple residential condominium unit numbers in the Headhouse Flats Condominium located at 200-210 Lombard Street, Philadelphia, Pennsylvania ("the Property") and on commercial condominium unit B in the Property.

In connection with the Loan, Borrower executed a cash management agreement with Wells Fargo Bank, National Association ("Wells Fargo"), and a deposit account control agreement ("DACA") with the Original Lender and Wells Fargo. We will refer to the loan agreement, note, mortgage, cash management agreement, and DACA as the "Loan Documents."

Eric Blumenfeld is Borrower's sole principal. Tenants at the Property include Giant Food Stores, Wawa, Rita's Water Ice, South Philadelphia Pediatrics, LLC, Supercuts, TD Bank, and Target Park U.S. Inc.

The loan agreement requires that "the Monthly Debt Service Payment Amount shall be paid by Borrower to Lender on each Payment Date." Loan Agreement, § 2.2.3. The loan agreement defines monthly debt service payment amount as meaning, "with respect to each Payment Date, an amount equal to all interest that is scheduled to accrue on the Outstanding Principal

Balance during the Accrual Period in which each such Payment Date occurs." Loan Agreement, § 2.2.3.

Pursuant to Section 1.1 of the mortgage, Borrower granted a security interest in the Property. Pursuant to Section 1.1(f) of the mortgage, Borrower also granted Lender a security interest in, inter alia, "all leases, subleases, rental agreement, letting, licenses, concessions and other agreements, whether or not in writing, affecting the use, enjoyment or occupancy of the Premises ("Leases") … and all rents, additional rents, payments in connection with any termination, cancellation or surrender of any Lease, revenues, issues or profits ("Rents")." Mortgage, Exhibit C, Section 1(f).

To protect the security interest, the Loan Documents have several provisions requiring the deposit of rents and other revenues generated by the Property into specific accounts created and held for the benefit of Lender. Specifically, pursuant to the loan agreement, the DACA, and the cash management agreement, Borrower was required to have all Tenants deposit Rents into the DACA account at Wells Fargo. Rents in the DACA account would then be disbursed daily into Lender's cash management account at Wells Fargo. *See* Loan Agreement, § 6.1.1; DACA §§ 1(a)-(b) and Sections 2-5; Cash Management Agreement § C and §§ 1(a) and 7-8. Section 6.1.2 of the loan agreement requires Borrower to deliver each commercial tenant a notice instructing it to pay Rent into the appropriate account. Section 4.1.4 of the loan agreement requires that Borrower provide monthly reports of Rents

collected from tenants and monthly operating statements of, *inter alia*, gross income, operating expenses and capital expenses.

Section 7.1(i) of the Loan Agreement provides that it is an event of default under the Loan "if any portion of the Debt is not paid on or before the date same is due and payable or if the entire Debt is not paid on or before the Maturity Date." Section 7.1(xii) of the loan agreement provides that it is an event of default under the loan "if Borrower shall continue to be in default under any other term, covenant or condition of this Agreement, the Note, the Security Instrument or the other Loan Documents not specified above [such as the obligation to instruct Tenants to deposit Rents into the Cash Management Account] for more than (y) ten (10) days after notice from Lender, in the case of any default which can be cured by the payment of a sum of money, or (z) thirty (30) days after notice from Lender, in the case of any other default."

Under Section 8.1(g) of the Mortgage, Borrower agreed that upon an Event of Default,

> Lender may take such action, without notice or demand, as it deems advisable to protect and enforce its rights against Borrower and in and to the Property, including, but not limited to, the following actions, each of which may be pursued concurrently or otherwise, at such time and in such order as Lender may determine, in its sole discretion, without impairing or otherwise affecting the other rights and remedies of Lender . . . apply for the appointment of a receiver, trustee, liquidator or conservator of the Property, without notice and without regard for the adequacy of the security for the Debt and without regard for the solvency of Borrower, any Guarantor or of any person, firm or other entity liable for the payment of the Debt.

Section 9.19 of the mortgage provides, "Borrower hereby waives the right to assert a counterclaim, other than a compulsory counterclaim, in any action or proceeding brought against it by Lender or its agents." In addition, Section 9.15 of the mortgage provides:

> Any assignee of Lender's interest in and to this Agreement, the Note and the other Loan Documents shall take the same free and clear of all offsets, counterclaims or defenses which are unrelated to such documents which Borrower may otherwise have against any assignor of such documents, and no such unrelated counterclaim or defense shall be interposed or asserted by Borrower in any action or proceeding brought by any such assignee upon such documents and any such right to interpose or assert any such unrelated offset, counterclaim or defense in any such action or proceeding is hereby expressly waived by Borrower.

The loan and loan documents were assigned several times between 2019 and 2021 and ultimately were assigned to Lender.

On May 21, 2021, Lender filed an action for breach of contract against Borrower alleging that Borrower defaulted on the loan by (1) failing to make monthly payments required under the loan documents and (2) diverting its tenants' rents into its own account at TD Bank instead of depositing rents into the DACA account specified in the loan documents. On June 4, 2021, Lender filed a motion seeking appointment of a receiver. Lender did not request any other form of relief in its motion. Borrower filed an answer along with counterclaims asserting that Lender committed the first material breach of contract by causing one of Borrower's tenants, Giant Food Stores, to stop paying rent to Borrower. In response to Borrower's answer and

counterclaims, Lender alleged that Section 9.15 of the mortgage precluded Borrower from raising a counterclaim that Lender committed the first material breach, and Section 9.19 precluded Borrower from raising a defense of first material breach against an assignee such as Lender.

The trial court held two days of evidentiary hearings on Lender's petition for appointment of a receiver. Lender furnished evidence that Borrower failed to make loan payments in all but one month between December 2020 and November 2021, and that at Borrower's direction, two of Borrower's tenants (WaWa and TD Bank) paid rent into Borrower's operating account instead of the DACA account specified in the loan documents. Other tenants—Target Park, Supercuts, Rita's and South Philadelphia Pediatrics—paid less than the full rent due for several months. During 2021, however, Borrower transferred over $112,000.00 from its operating account into an account controlled by Borrower's president. Borrower also made other payments out of the operating account totaling almost $100,000.00 without divulging the reason for these payments. Appellee's Brief at 18-20 (summarizing evidence with record citations).

At the conclusion of the hearings, the court asked Lender what other remedies it proposed besides appointment of a receiver, N.T., 11/18/21, at 42, even though a receivership was the only relief that Lender sought in its motion. Lender proposed that the court appoint a receiver or, in the alternative, order Borrower to instruct its tenants to deposit all rents into the

DACA account and direct Borrower to provide an accounting of all rents that Borrower deposited into its own account at TD Bank. Subsequently, Lender submitted proposed findings of fact and conclusions of law that made the same requests for a receiver or alternative relief.

On December 13, 2021, the trial court issued a memorandum and order denying Lender's motion for a receiver. Although the court found that Borrower failed to make monthly payments, it stated that appointment of a receiver is a "drastic" remedy, and that Lender had "fallen extremely short" of proving any need for a receiver. Trial Court Memorandum, 12/13/21, at 6. With regard to Lender's claim that Borrower had diverted all rents, the court claimed that Borrower had paid part of the management fees due under the loan documents. In addition, the court observed, "[Borrower] contends that these payments are excused because of [Lender's] breach on several fronts. Reasons that debt service has not been paid is to be determined by another court hearing and [is] the subject of another court proceeding." *Id.*

Although the court denied Lender's request for a receiver, it accepted Lender's proposed alternate remedy because it "recogniz[ed] the fundamental unfairness of [Borrower] not paying the interest due and sporadically providing financial and other information that is required under the loan documents while simultaneously having the tenants pay rent into [Borrower's] operating account." *Id.* at 7. The court entered the following order:

[Borrower shall]

a. Within 20 business days of the docketing of this Order, instruct all Tenants to pay Rents pursuant to the requirements of the Loan Agreement, the Deposit Account Control Agreement (the "DACA"), and the Cash Management Agreement (including but not limited to requiring the Tenants pay their Rents into the DACA Account at Wells Fargo), and provide proof to [Lender] and the Court that this instruction has been given;

b. Within 30 business days of the docketing of this Order, provide [Lender] and the Court an accounting of all Rents paid directly into [Borrower's] operating account at TD Bank since January 1, 2021 (the "Accounting"), and within fifteen (15) business days of submission of the Accounting, transfer all such Rents previously paid to [Borrower's] operating account at TD Bank into the Cash Management Account at Wells Fargo, and provide proof that this transfer has been completed;

c. For the month of October 2021 and forward, provide [Lender] with the financial information required by Section 4.1.4 of the Loan Agreement, as well as monthly operating activity reports regarding the rent collections, leasing activity, and the most current rent rolls to be provided on the fifteenth (15th) day of each month (starting with December 15, 2021) regarding the rent collections, leasing activity, and rent roll for the prior month.

Order, 12/13/21.

Borrower timely appealed the order to this Court, and Lender timely cross-appealed. One day after Lender's appeal, the court granted Borrower's motion for stay of the court's order pending the outcome of the appeals. Lender and Borrower complied with Pa.R.A.P. 1925, but the court did not file a Pa.R.A.P. 1925 opinion.

On January 24, 2023, during the pendency of these appeals, the court entered an order granting Lender's motion for summary judgment on Borrower's counterclaims on the ground that Section 9.19 of the mortgage prohibited Borrower from raising these counterclaims in this action.

Borrower raises the following issues in its appeal:

1. Did the trial court err as a matter of law and/or abuse its discretion by awarding [Lender] relief where, as the trial court found, [Lender] (i) "has fallen extremely short of meeting its burden in appointing a receiver," (ii) "did not present evidence of any emergency, loss, waste, injury, dissipation of the property or abuse of funds", and (iii) its allegations of default based upon the "divergence and misappropriation of rented from the Property" were "incorrect, inaccurate, and unproven"?

2. Did the trial court err as a matter of law and/or abuse its discretion by awarding [Lender] equitable relief where [Lender] has adequate remedies at law available?

3. Did the trial court err as a matter of law and/or abuse its discretion in ordering [Borrower] to direct the tenants to pay their rents to the DACA Account and ordering appellants to transfer all rents previously paid to it into the Cash Management Account on the grounds that (i) such relief constitutes prejudgment attachment which is not permitted under Pennsylvania law, (ii) even if it was permitted, such relief is not warranted given that (a) there is no allegation/claim of fraud and (b) the trial court expressly found that [Lender] "did not present evidence of any emergency, loss, waste, injury, dissipation of the property or abuse of funds", and (iii) awarding such relief substantially interferes with appellants' ability to effectively manage the subject property and would negatively impact the tenants of the property?

4. Did the trial court err as a matter of law and/or abuse its discretion by entering an order, in the nature of a mandatory injunction, compelling [Borrower's] performance under loan documents where (i) there exists an adequate remedy of law for appellee, (ii) this is not a "clear case" for contract enforcement, (iii) [Lender's] averments of default under the loan documents is the ultimate issue in the case, and (iv) [Borrower's] performance under the loan documents was/is excused by [Lender's] pre-occurring material breaches of the loan documents?

Borrower's Brief at 4-5.

Lender raises the following issues in its cross-appeal:

1. Whether the appointment of a receiver was warranted, where the governing loan documents specifically provide for the

appointment of a receiver upon default, and the Borrower admitted to payment default.

2. Whether the appointment of a receiver was warranted, where the Borrower admitted to diverting Rents and other proceeds from the Property to the Borrower's own operating account rather than the Cash Management Account as required, thereby threatening the Lender's security interest in the Property and Rents?

3. Whether the appointment of a receiver was warranted based upon the Borrower's mismanagement of the Property?

4. Whether in light of the Borrower's demonstrated and admitted payment default, and the recognized "fundamental unfairness of [Borrower] not paying the interest due and sporadically providing financial and other information that is required under the loan documents while simultaneously having the tenants pay rent into [Borrower's] operating account," the trial court appropriately exercised its discretion in awarding alternative relief?

Lender's Brief at 6-7.

In essence, Lender appeals the portion of the order denying its motion for receivership, and Borrower appeals the portion of the order requiring the alternate remedies directing ongoing deposits of rents into the DACA account, an accounting, and monthly financial reports. Pa.R.A.P. 311(a)(2) provides that an interlocutory appeal may be taken as of right from "an order confirming . . . or refusing to confirm [a] . . . receivership or similar matter affecting the possession or control of property," except for matters arising in divorce proceedings not relevant here. Under Rule 311(a)(2), we have jurisdiction over Lender's appeal as one from an order refusing to confirm a receivership, and we have jurisdiction over Borrower's appeal as one from an order affecting the possession or control of property.

At the outset, we vacate the court's determination to award alternative relief. The only relief requested in Lender's motion was an order for a receivership. Therefore, the court should have limited its decision to granting or denying this request. By asking Lender for alternative remedies during the hearings, the court deprived Borrower of its right to file written objections to alternative relief in advance of the hearings. More importantly, the court failed to explain what doctrine it applied—equitable, legal or otherwise—as the basis for awarding relief. Perhaps the court intended to award Lender specific performance under the Loan Documents, but we cannot tell for certain, because there was no claim of specific performance before the court, and because the court's justification for its decision, "fundamental fairness," is untethered to any specific principle. We hold that there is no proper foundation in the record for alternative relief.

Turning to the court's decision to deny a receiver, our first step is to determine the proper standard of review. Lender contends that it is contractually entitled to a receiver under the terms of the loan agreement; Borrower contends that common law standards for appointment of a receiver apply. We agree with Borrower that common law standards apply.

At common law, the appointment of a receiver is a "severe, and may be termed an heroic, remedy," and "the court . . . will act with the utmost caution" before making this appointment. ***McDougall v. Huntingdon & Broad Top R. & C. Co.***, 143 A. 574, 577-78 (Pa. 1928). Receivership of a solvent

corporation is a "drastic remedy," and should only be granted when "(1) the right to a receivership is free from doubt, and (2) a receivership is clearly required by the facts and circumstances and equities of the case." *Tate v. Phila. Transp. Co.*, 190 A.2d 316, 317 (Pa. 1963). Appointment of a receiver "is not to be undertaken lightly," and "the decision to appoint is within the sound discretion of the trial court." *Abrams v. Uchitel*, 806 A.2d 1, 8 (Pa. Super. 2002). Despite this demanding standard, the trial court has the discretion to appoint a receiver when assets are wasted or dissipated, *Hankin v. Hankin*, 493 A.2d 675, 677 (Pa. 1985), or when a borrower defaults on its loan payments. *See Metropolitan Life Insurance Co. v. Liberty Center Venture,* 650 A.2d 887, 890-91 (Pa. Super. 1994) (mortgagee entitled to appointment of receiver where mortgagor unilaterally made payments at interest rate of 10% instead of 14½ and 15% required under notes).

Lender argues that Section 8.1(g) of the mortgage governs instead of common law. Section 8.1(g) states that "[u]pon the occurrence of any Event of Default, Borrower agrees that Lender **may . . . apply** for the appointment of a receiver, trustee, liquidator or conservator of the Property . . ." [emphasis added]. Lender reads this text too expansively. "May apply" merely entitles Lender to request appointment of a receiver in the event of default, but it does not automatically entitle Lender to appointment of a receiver without more. The court retains the discretion to grant or deny Lender's request. Authority relied upon by Lender does not require a different result. In three of the cases

cited by Lender, the parties expressly agreed that in the event of a default, the lender "shall have" the right "to apply [for] . . . and obtain" a receiver, or "shall be entitled to" appointment of a receiver, or are entitled to a receiver "as a matter of right," materially different language from the text in this case. *See Metropolitan Life Ins. Co.,* 650 A.2d at 891 ("If an Event of Default shall have occurred and be continuing, Mortgagee, upon application to a court of competent jurisdiction, shall be entitled . . . to the appointment of a receiver(s) . . . "); *Wells Fargo Bank, N.A. v. InSite Dunmore (O'Neil)*, LLC, 2015 WL 5074421, *5 (CCP Lackawanna Cty. 2015) (mortgage entitled lender to appointment of receiver "as a matter of right" and borrower "irrevocably consent[s]" to appointment); *City Nat. Bank v. 728 Market Street, LP*, 2012 WL 781185, *5 (CCP Philadelphia Cty. 2012) ("The Lender [City National Bank] shall have the absolute and unconditional right to apply to any court having jurisdiction and obtain the appointment of a receiver or receivers of the Property").  In the fourth case, *MSCI 2006-IQ11 Logan Boulevard Ltd. P'ship v. Greater Lewistown Shopping Plaza, L.P.*, 2017 WL 485958 (M.D. Pa. 2017), the loan agreement provided that "[Lender] may apply for the appointment of a receiver to manage and operate the property," but it also provided that the borrower "consents, to the extent permitted by applicable law, to the appointment of a receiver."  *Id.* at *2; *see also City Nat. Bank*, 2012 WL 781185, at *5 (borrower "irrevocably consent[s]" to appointment).  Here, in contrast, Lender does not identify any text in which

14

Borrower consents to the appointment of a receiver without more; nor can we find any. The final two cases cited by Lender are unpublished decisions of this Court from 2014 and 2016. The Rules of Appellate Procedure prohibit us from taking into account any unpublished decision from this Court filed before May 2, 2019. Pa.R.A.P. 126(b).

Without a contractual entitlement or right to have a receiver appointed here, Lender may still seek appointment of a receiver but bears the burden of satisfying common law standards to obtain this relief. Although there are no citations to relevant law in the trial court's memorandum, it appears that the court applied common law standards to this case, given its use of such terms as "waste, injury, dissipation of the property or abuse of funds." Trial Court Memorandum at 6; *see Hankin*, 493 A.2d at 677 (waste or dissipation of assets provides cause for appointment of receiver). Several aspects of the court's decision, however, create concern that it misapplied these standards.

First, it appears that the court misinterpreted the evidence. The court stated that Lender failed to prove the need for a receiver because it could not demonstrate that Borrower diverted or mismanaged funds. Borrower, the court continued, did not divert or mismanage funds, because it "presented testimony of a sum of partial management fees being paid to the manager, EB Management Corp. ("EBRM"), for providing management services at the Property." Trial Court Memorandum at 6. The evidence demonstrates, however, that EBRM is solely owned by Blumenfeld, Borrower's sole principal.

Tr., 11/18/21, at 19. Between January and September 2021, Borrower paid EBRM $112,686.13 in management fees. Tr. 11/12/21, at 31-33. By paying EBRM, Blumenfeld effectively paid himself at the same time he failed to pay the debt service owed on the loan. Tr. 11/12/21, at 36-37 ("Q: You're paying the alleged arrearages to your management company, but not your lender, correct? A: (No answer.) Q: Is that correct? A: That is correct"). This evidence suggests that Borrower diverted monies to a company owned by its principal instead of making payments towards the loan.

Next, there appears to be an inconsistency in the court's analysis. On page 6 of its memorandum, the court denied a receivership because it found no abuse of funds or diverting of rents by Borrower. Trial Ct. Memorandum at 6. On page 7, however, the court found that Borrower refrained from paying the loan while "simultaneously having the tenants pay rent . . . into [Borrower's] operating account," *id.* at 7, text which indicates that Borrower intentionally failed to pay the loan while simultaneously diverting or mismanaging rents. Additionally, on page 6, the court denied a receivership because it found that Borrower might have viable defenses, such as Borrower's contention that Lender committed the first material breach by interfering with Borrower's business relationship with Giant. *Id.* at 6. On page 7, however, the court "recogniz[ed] the fundamental unfairness" of Borrower not paying the loan. *Id.* at 7. It is difficult to harmonize the determination that non-payment by Borrower is "fundamentally unfair" with

the determination that Borrower might have meritorious defenses for non-payment.

Next, the court's statement that Lender failed to present evidence of the proposed receiver's qualifications or course of action is belied by the record. Lender's petition (1) recommended Stephen Resinski and his organization, Colliers International, as the receiver, (2) listed Resinski's qualifications, (3) proposed a plan for improving tenant satisfaction, maintaining and upgrading the Property, reducing costs, and otherwise improving the operation of the Property, and (4) submitted a schedule of Resinski's and Colliers' proposed fees. Lender's Petition For Appointment of Receiver, ¶¶ 57-58 & exhibits 5, 6.

Finally, the court's decision on January 24, 2023 to dismiss Borrower's counterclaims calls into question whether Borrower has any viable defenses to Lender's action, since Borrower's defenses appear to rest on the same theory as its counterclaims (namely, Lender committed the first material breach).

These concerns require remand for further proceedings as to whether appointment of a receiver is warranted under common law.

Order vacated. Case remanded for further proceedings in accordance with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/01/2023